David JONES

v.

Margaret HECKLER, Secretary of Health & Human Services.

Civ. A. No. 84–104.

United States District Court, D. Vermont.

July 18, 1985.
As Amended Sept. 11, 1985.

**278**

Elliot M. Burg, South Royalton Legal Clinic, South Royalton, Vt., for plaintiff.

Christopher Baril, Asst. U.S. Atty., Rutland, Vt., for defendant.

## MEMORANDUM OF DECISION

BILLINGS, District Judge.

Plaintiff, David Jones, has objected to the Magistrate's Report and Recommendation (Report) filed May 7, 1985, pursuant to 28 U.S.C. § 636(b)(1)(C). In his Report, the Magistrate concluded that the decision of the Secretary of Health and Human Services (Secretary) denying plaintiff's application for Disability Insurance Benefits (DIB) was supported by substantial evidence and, further, that the Secretary's failure to call a vocational expert to testify at the administrative hearing was not legal error. The plaintiff's objections to the Magistrate's Report were submitted on written and oral argument.

The Court has considered the record presented for review, together with the arguments advanced by counsel at the hearing and in their respective memoranda. For the reasons that follow, the Court adopts Magistrate's Report in its entirety, and we further hold that the Secretary's decision denying plaintiff's application for DIB benefits is both supported by substantial evidence and devoid of legal error.

## PROCEDURAL HISTORY

On June 30, 1982, plaintiff filed applications for Social Security Income (SSI) and DIB, claiming disability to work since November, 1981, due to mental illness. On July 30, 1982, after being informed by the Social Security Administration that his insured status for DIB expired on December 31, 1975, plaintiff amended his application to claim onset of disability in 1974.

Plaintiff's applications were denied initially and again upon reconsideration. Plaintiff filed a request for a hearing before an Administrative Law Judge (ALJ). A *de novo* hearing was held before ALJ Henry Milne on May 5, 1983. The ALJ ruled that plaintiff was disabled since June

30, 1982 (the date of his application) and, therefore, was entitled to SSI. However, the ALJ denied plaintiff DIB since his insured status had expired on December 31, 1975. In other words, the ALJ concluded plaintiff failed to demonstrate that he was disabled during the period of his insured status.

The Appeals Council affirmed the ALJ's ruling on January 30, 1984, thus rendering the ALJ's ruling the final decision of the Secretary. Plaintiff then filed a timely appeal to this Court, pursuant to 42 U.S.C. § 405(g).

### FACTUAL BACKGROUND

The facts presented in the record are correctly reported by the Magistrate and are accepted without recitation except to the extent that the Magistrate failed to report any non-medical evidence contained in the administrative record below. To that extent, the Court has considered all the lay evidence presented by plaintiff, *see, infra* at 281, but nevertheless holds that such evidence does not affect the outcome of their case.

### DISCUSSION

The issue before the Magistrate was whether the Secretary's decision that plaintiff was not disabled on or before December 31, 1975, is supported by substantial evidence and whether the Secretary committed error by failing to call a vocational expert. As mentioned above, the Magistrate found that the Secretary's decision was supported by ample evidence and, further, that the Secretary was not legally bound to call a vocational expert to testify at the administrative hearing.

Plaintiff has raised three specific objections to the Magistrate's Report. The first is that the Magistrate did not give proper weight to the opinions offered by plaintiff's treating physicians. The second objection is that the Magistrate erroneously concluded that there was no lay testimony or evidence on which to bottom a conclusion that the post-1976 medical evidence may be retrospectively applied to plaintiff's condition in 1975. The third and final objection to the Report is that the Magistrate failed to consider the argument that the Secretary did not meet her burden to produce expert evidence that there are a sufficient number of jobs in the national economy that persons with plaintiff's functional limitations could do.

A person is "disabled" within the meaning of the Social Security Act, entitling him to benefits, if he is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 1382(c). Disability claims are to be evaluated by a five-part analysis:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations ... Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is work which the claimant could perform.

*Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982).

In determining whether a claimant is disabled the Secretary must consider (1) objective medical facts and clinical findings, (2) diagnoses and medical opinions of examining physicians, (3) the claimant's subjective evidence of pain and physical incapacity as testified to by himself and others who observed him, and (4) the claimant's age, educational background, and work history. *Carroll v. Secretary of*

*HHS,* 705 F.2d 638, 642 (2d Cir.1983); *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir. 1980); *Marcus v. Califano,* 615 F.2d 23, 26 n. 2 (2d Cir.1972).

In this case, plaintiff concedes that there is little or no medical evidence concerning the claimed period of disability, from 1974 up to and including December 31, 1975.[1] However, he claims medical evidence from plaintiff's treating physicians who examined him in December of 1976, in 1977 and during the 1982–83 year, may be relied upon to draw conclusions about plaintiff's medical condition on or prior to December 31, 1975. In this regard, plaintiff relies primarily on reports submitted by Drs. Metoyer and Rasmussen, neither of whom treated plaintiff prior to 1977.

A treating physician's opinion may be applied retroactively to draw conclusions about a claimant's medical condition *prior* to treatment. *Dousewicz v. Harris,* 646 F.2d 771 (2d Cir.1981). That opinion, however, is not entitled to the same weight as otherwise would be given if the examination was *contemporaneous*[2] with the claimed period of disability. *Id.* at 774. *See also McCarthy v. Schweiker,* 529 F.Supp. 473, 476 (S.D.N.Y.1982). Rather, a treating physician's retroactive opinion "must be evaluated in terms of whether 'it is predicated upon "medically accepted clinical diagnostic technique"'' and 'whether considered in light of the entire record, it establishes the existence of a "physical impairment"''' during the alleged period of disability. *Dousewicz, supra,* at 774, *quoting Stark v. Weinberger,* 497 F.2d 1092, 1097 (7th Cir.1974).

To be sure, the ALJ's decision is not a paragon of clarity, and it is unclear whether he gave proper weight to the retroactive opinions of plaintiff's treating physicians. Nonetheless, the absence of an express ra-

tionale does not prevent this Court from upholding the ALJ's ruling, since portions of the ALJ's ruling and the evidence before him indicate that his ruling was supported by substantial evidence.

In this case, however, the plaintiff has failed to show, as is required by *Dousewicz,* that the opinions of Drs. Metoyer and Rasmussen as to plaintiff's medical condition on or before December 31, 1975, were based on a "medically accepted clinical diagnostic technique" rather than simple conjecture by an expert. Second, even if the treating physicians' opinions were predicated on accepted clinical evidence, we cannot say those opinions are sufficiently probative of plaintiff's medical condition in 1975, because those opinions are, in fact, internally inconsistent and are contradicted by other medical evidence of record.

For example, although Dr. Metoyer's 1983 report indicates that plaintiff is not capable of working a 40 hour week, and that "historically" plaintiff must have been disabled in 1975, her 1977 report states that plaintiff had appropriate affect, no significant memory problems, no obvious thought process defect and no impairment of judgment or insight. (Tr. 153, 201) True, Dr. Metoyer saw plaintiff in 1977 after he tried to commit suicide by overdose and, in her report of that incident, she stated that plaintiff had a "longstanding inadequate adjustment to life". However, in that same report she also concluded that plaintiff was not a latent schizophrenic, but, at worst, plaintiff suffered from a borderline personality and could be vulnerable to a schizophrenic episode. (Tr. at 202) Thus, apart from her reference to plaintiff's "longstanding" adjustment problems, there is inadequate evidence in Dr.

---

**1.** In his *Memorandum In Support of Plaintiff's Objection to the Magistrate's Report and Recommendation,* at 2, plaintiff states: "[i]ndeed there are no medical reports available between May 1972, the date of an opinion by Psychiatrist Alice Wright at Northeast Kingdom Mental Health Services (NKMHS), and December 1976, when plaintiff resumed treatment at NKMHS."

**2.** The opinions of a treating physician whose diagnosis is contemporaneous with the claimed period of disability are binding on the Secretary unless contradicted by substantial evidence. *Bluvband v. Heckler,* 730 F.2d 886, 893 (2d Cir. 1984), *quoting Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978).

Metoyer's 1977 reports to conclude that plaintiff was disabled in 1975.

Likewise, Dr. Rasmussen's reports are self-contradictory. Although he stated plaintiff's pathological symptoms had remained the same for many years, he also noted that plaintiff's symptoms had gradually deteriored over time. Additionally, although he concluded that plaintiff was likely disabled in 1975, he stated in a 1983 questionnaire that plaintiff had been afunctional with respect to his occupational and social functioning only for the last four years.

Dr. Rasmussen's conclusions regarding plaintiff's medical condition in 1975 are also contradicted by Dr. Metoyer's 1977 conclusions that plaintiff had appropriate affect and unimpaired judgment. Additionally, both Dr. Rasmussen's and Dr. Metoyer's opinions regarding plaintiff's medical condition in 1975 are weakened by Dr. Wright's conclusion in 1972 that plaintiff had no mental disorder. Clearly, then, the opinions of Drs. Metoyer and Rasmussen as to plaintiff's medical condition in 1975 are contradicted by significant medical evidence in the record, including their own findings.

The next question is whether the non-medical evidence of record sufficiently supports the treating physicians retroactive opinions to warrant a conclusion that plaintiff was disabled in 1975. In support of his claim that he was disabled in 1975, plaintiff points to the following "lay" evidence:

Plaintiff was involved in substance abuse at age 13 (1966), Tr. 243, and was homosexually raped that same year. Tr. 147. At 16, he attempted suicide, Tr. 324, and dropped out of school because of bad feelings about his physical appearance. Tr. 165. In August, 1971, plaintiff was evaluated as "withdrawn" and the product of an "unsettled home life," and the next year (*after* Dr. Wright's evaluation) he was considered by his psychologist to have a passive-aggressive personality and "schizi tendencies". Tr. 144. His brief enlistment in the Army in 1973 was characterized by substance abuse, Tr. 192, 264, a "nervous breakdown" with withdrawal and depression, Tr. 269, disturbed dreams, some degree of paranoia and, in the end, a discharge following four months of out-patient psychiatric counseling. Tr. 150. He has been self-conscious about his "shakiness" since "early in life", Tr. 195, 266, and test results suggest "profound isolation" in his early years. Tr. 281. His work history is "extremely poor."

However, like the medical evidence in the record this "lay" evidence leaves a gap in the testimony during a critical period, namely from 1973 when plaintiff was discharged until December, 1976, when plaintiff was admitted to Northeast Kingdom Mental Health Services. This gap is fatal to plaintiff's case, for we hold there must be some evidence, either medical or lay, *during* the claimed period of disability to corroborate medical testimony which a claimant seeks to apply retroactively. *See, e.g., Dousewicz v. Harris, supra,* at 774 (plaintiff submitted "considerable" evidence, including operations during relevant period, to corroborate doctors' opinion, derived through *later* examinations, that plaintiff was disabled during claimed period); *Basinger v. Heckler,* 725 F.2d 1166 (8th Cir. 1984) (gap in medical testimony during plaintiff's insured status was supplemented by lay testimony from relatives and friends regarding plaintiff's condition during relevant period); *Boyd v. Heckler,* 704 F.2d 1207 (11th Cir. 1983) (testimony from plaintiff and her family regarding pain and inability to work during period in question was sufficient to offset gap in the medical testimony). Thus, even when viewed in light of all the other evidence in the record, we cannot say that the post-1976 medical evidence in the record combined with the pre-1974 lay evidence is sufficient to establish a disability on or before December 31, 1975. This is especially so when post-1975 lay evidence—not mentioned by plaintiff—is taken into account; in the early 1980's plaintiff regularly participated in a band.

Finally, plaintiff contends that the Secretary was bound to call a vocational expert to testify at the administrative hearing. This argument presupposes that the burden of proof had shifted to the Secretary to establish there were other jobs in the national economy that plaintiff could do despite his functional limitations.

■ As mentioned above, *supra,* at 279, the determination of a disability involves a five-step test. If at any stage of the inquiry the ALJ determines that a claimant is or is not disabled, the inquiry ends there. *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982). The burden is on the claimant to satisfy the first four elements of the test. However, assuming the claimant satisfies his burden, the burden then shifts to the Secretary to establish the fifth step of the test. At that point the Secretary must establish that the claimant, despite his disability, can do other work. *See,* 20 C.F.R. § 404.1520(f)(1). To meet this burden, the Secretary must ordinarily call a vocational expert to testify about the availability of jobs in the national economy.

■ In this case, however, the plaintiff failed to satisfy the second of the first four elements of the disability test and, therefore, the burden never shifted to the Secretary. Although his decision does not specifically so state, it is clear the ALJ found that plaintiff failed to establish he had a *severe* impairment on or before December 31, 1975. *See* 20 C.F.R. § 404.520(c). This determination does not require consideration of age, education or prior work experience. *Id.*

The Magistrate's conclusions that the Secretary's findings are supported by substantial evidence is well founded in the record. Likewise, the Magistrate's conclusion that the Secretary was not required to call a vocational expert is supported by law. Accordingly, the Magistrate's recommended decision is accepted. Plaintiff's motion for summary judgment is DENIED and the Secretary's motion for an order affirming her decision is GRANTED.

It is SO ORDERED.