Isabel RIVERA, Plaintiff,

v.

Louis W. SULLIVAN, M.D., Secretary
of Health and Human Services,
Defendant.

No. 85 Civ. 6340 (JES).

United States District Court,
S.D. New York.

Dec. 27, 1989.

**138**

Washington Square Legal Services, Inc., New York City, for plaintiff; Nancy Morawetz, Lisa Ferrari, Lisa Freeman, Michelle Small, Legal Interns., of counsel.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City, for defendant; Sapna V. Raj, Sp. Asst. U.S. Atty., of counsel.

SPRIZZO, District Judge:

Plaintiff, Isabel Rivera, brought this action pursuant to §§ 205(g) and 1631(c)(3) of the Social Security Act, as amended, ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3) (1982 & Supp.1987), seeking review of a final decision of the Secretary of Health and Human Services ("the Secretary"). Both parties have filed cross-motions for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), and the Court has reviewed the record and heard Oral Argument. For the reasons that follow, the Secretary's motion is granted and the plaintiff's motion is denied.

## BACKGROUND

Plaintiff was born on October 14, 1929 in Puerto Rico. *See* Transcript ("Tr.") at 29. She received a fifth grade education and can read and write in Spanish, but not in English. *See* Tr. at 30, 147, 172–73. In 1953, when plaintiff was 23 years old, she came to New York City. *See* Tr. at 29, 147, 173.

From 1954 to 1962, she was employed as a presser at the John Douglas Company in Manhattan. *See* Tr. at 31, 156. After leaving John Douglas Company, plaintiff was employed as a Fabric Inspector at 86 Leonard Street in Manhattan from 1962 to 1964. *See* Tr. at 31, 156–57, 184–85.

Plaintiff's last job was at the Miller Company, where she worked from 1970 to 1974. At Miller, plaintiff packaged appliances. This required that she lift boxes that weighed up to 50 pounds and stand for eight hours each day. *See* Tr. at 31–34, 151–52, 184.

Ms. Rivera stopped working at approximately the end of 1974 because of arthritis, *see* Tr. at 31–32, and has not worked since. *See* Tr. at 159, 173. Since that time, plaintiff sought treatment from physicians in New York. *See* Tr. at 150, 158, 179, 216. Plaintiff also made two trips to Puerto Rico and sought medical care there. *See* Tr. at 158–59. She returned to New York in 1982 to care for her mother and remained after her mother's death. *See* Tr. at 159, 182, 186–87.

Plaintiff filed a claim for social security benefits on January 28, 1983 seeking disability insurance under Title II of the Act and supplemental social security income under Title XVI of the Act. Her claims were based upon her alleged disabilities from arthritis. *See* Tr. at 41–44, 54–64. The Secretary summarily rejected her claims, Tr. at 45–48, 64–66, and her petitions for reconsideration were similarly denied. Tr. at 50–53, 67–71.

Pursuant to the decision in *Dixon v. Heckler*, 589 F.Supp. 1494 (S.D.N.Y.1984), *aff'd*, 785 F.2d 1102 (2d Cir.1986), *vacated*, 482 U.S. 922, 107 S.Ct. 3203, 96 L.Ed.2d 690 (1987), a *de novo* hearing was held on January 14, 1985 to review the denial of benefits. *See* Tr. at 26–40. The Administrative Law Judge ("ALJ") determined that petitioner was not disabled, Tr. at 10–11, and

the Appeals Council denied review. *See* Tr. at 2.

Plaintiff then sought judicial review in this Court. This Court remanded the case to the Secretary for further development of the record.

Pursuant to the Court's order, a *de novo* hearing was held on March 6, 1987. *See* Tr. at 143–67. Following that hearing the ALJ determined that Ms. Rivera was disabled from December 31, 1974 through the date of the decision and recommended that she be awarded benefits. *See* Tr. at 138. The Appeals Council, however, refused to accept that decision because it concluded that the record did not support the ALJ's finding and ordered that another *de novo* hearing be held. *See* Tr. at 130–31.

The third and final hearing was held on October 29, 1987. *See* Tr. at 170–88. Following the hearing, the ALJ determined that Ms. Rivera was disabled as of January 28, 1983, but that she was not disabled prior to that date. The ALJ, therefore, recommended that supplemental social security benefits under Title XVI of the Act be granted and that disability insurance benefits under Title II of the Act be denied because plaintiff had failed to demonstrate that she became disabled prior to June 30, 1978, the date that her insured status expired. *See* Tr. at 125–26; *cf.* 42 U.S.C. §§ 423(a)(1)(A) and 423(c)(1); *Arnone v. Bowen*, 882 F.2d 34, 38 (2d Cir.1989).

The Appeals Council adopted this recommendation, although utilizing a different rationale, Tr. at 110, and plaintiff sought review in this Court.

### THE RECORD BELOW

Plaintiff's treating physician, Dr. Zavalla–Macapagal, submitted a note dated May 23, 1983 that was made an exhibit to the hearing held on January 14, 1985. *See* Tr. at 92. The note stated that she was treating Ms. Rivera for pharyngitis, chronic bronchitis, bronchial asthma and arthritis. The note further opined that Ms. Rivera was "unable to work." *Id.*

Plaintiff also submitted a report by Dr. Zavalla–Macapagal dated February 27, 1987 that detailed her treatment of plaintiff. *See* Tr. at 191–97. In that report, Dr. Zavalla–Macapagal stated that plaintiff has osteo-arthritis of the spine and extremities, chronic bronchitis and anxiety. *Id.* at 191. She also stated that, in her opinion, plaintiff could sit up for one hour, stand for one hour, and walk for one half hour. *Id.* at 194. Dr. Zavalla–Macapagal concluded that plaintiff was unable to work because of her illness. *Id.* at 195.

In addition to this report, plaintiff submitted a declaration from Dr. Zavalla–Macapagal dated October 28, 1987 and copies of a Dr. Dumlao's records of plaintiff's treatment during 1977–78. Dr. Zavalla–Macapagal stated that, in her professional opinion "it is most probable that Ms. Rivera's medical conditions in 1977 were approximately the same as they were in 1983 ... [and] these conditions have rendered Ms. Rivera unable to work since at least May, 1977." Tr. at 216. These opinions were based upon her review of Dr. Dumlao's notes.

Dr. Dumlao's records relate to a series of office visits between May 11, 1977 and August 28, 1978. Tr. at 217–21. The records indicate that Dr. Dumlao treated plaintiff for osteoarthritis, chronic bronchitis and anxiety. Dr. Dumlao also took note of Ms. Rivera's complaints of pain in the knees, back, toes, and chest. *See* Tr. at 216–17. She prescribed Nalfon, Darvon, and Indocin for Ms. Rivera's arthritis. In addition, she prescribed Valium for the anxiety and Actifed for the respiratory ailments. *See* Tr. at 216, 217–21.

In addition to plaintiff's treating physician, several consulting physicians examined plaintiff and their reports were entered into the administrative record. Dr. Antonio DeLeon examined plaintiff on March 18, 1983 and concluded that plaintiff had "generalized arthralgia—probably osteo-asthritic in nature." Tr. at 88.

Dr. John Bortz examined plaintiff on August 18, 1983. He noted that plaintiff had a history of asthma for nine months and a history of arthritis for nine years. *See* Tr. at 93. Dr. Bortz also noted that plaintiff complained of pain in the neck, back, shoul-

ders, elbows, hands, knees, ankles, and feet, and swelling in the knees, ankles and hands. *Id.* Dr. Bortz concluded that plaintiff had a decreased range of motion in the cervical spine and the right knee associated with pain on motion, but normal range of motion of all other major joints. *Id.* at 94–95. X-rays taken in connection with this examination revealed that plaintiff had mild scoliotic curvature of the spine with minimal degenerative change. *See* Tr. at 96.

On August 18, 1983, Dr. Robert Swearinger also examined plaintiff. *See* Tr. at 100–01. He noted plaintiff's complaint of pain, but concluded "other than [an] enlarged sternoclavicular joint on the left the patient has no objective findings." *Id.* at 101.

After the case was remanded to the Secretary, Dr. Bernard Hanover examined plaintiff on September 18, 1987. He concluded that plaintiff had "generalized progressive and symptomatic osteo-arthritis of multiple joints with straightening and lipping of the lumbar spine as well as the dorsal spine on x-ray and some limitation of motion of the left ankle." Tr. at 210–11. He also agreed with Dr. Zavalla–Macapagnal's conclusions about plaintiff's current disabilities. *See* Tr. at 213. He did not provide a retrospective diagnosis.

In addition to this medical evidence, plaintiff testified at three evidentiary hearings. In her testimony, plaintiff complained of pain in her neck, back, feet, knees, and hands and explained the impact that arthritis had upon her activities. *See* at Tr. 26–40, 143–67, 168–88.

## DISCUSSION

The issue facing the Court is whether the Secretary's determination that plaintiff was not disabled on or before June 30, 1978 is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3) (1982); *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Havas v. Bowen,* 804 F.2d 783, 785 (2d Cir.1986). Plaintiff argues that the Secretary's failure to accord binding weight to the uncontradicted retrospective diagnosis

of Dr. Zavalla–Macapagal, plaintiff's treating physician, violates the Second Circuit's treating physician rule and renders the Secretary's determination unsupported by substantial evidence. However, the Court concludes that since a treating physician's retrospective opinion is entitled to diminished weight and there is no other evidence in the record that would support a finding that plaintiff was disabled in June of 1978, the deference required by the "substantial evidence" standard of review mandates that the Secretary's determination be upheld.

In this circuit, a treating physician's opinion on the subject of a medical disability is "(1) binding on the fact-finder unless contradicted by substantial evidence and (2) entitled to some extra weight, even if contradicted by substantial evidence." *Schisler v. Bowen,* 851 F.2d 43, 47 (2d Cir.1988) ("Appendix A"); *accord Hidalgo v. Bowen,* 822 F.2d 294, 296–97 (2d Cir.1987); *Havas, supra,* 804 F.2d at 785; *Bluvband v. Heckler,* 730 F.2d 886, 892–93 (2d Cir.1984). However, although a treating physician may give a retrospective opinion about a claimant's medical condition prior to his treatment of the claimant, *see Arnone, supra,* 882 F.2d at 39; *Dousewicz v. Harris,* 646 F.2d 771, 774 (2d Cir.1981); *Jones v. Heckler,* 614 F.Supp. 277, 280 (D.Vt.1985), a treating physician's retrospective opinion is not entitled to the same weight that a contemporaneous opinion would be entitled to receive. *See Jones, supra,* 614 F.Supp. at 280; *see also McCarthy v. Schweiker,* 529 F.Supp. 473, 476 (S.D.N.Y.1982). Such an opinion "must be evaluated in terms of whether it 'is predicated upon a "medically accepted clinical diagnostic technique"' and 'whether considered in light of the entire record, it establishes the existence of a "physical impairment"'" during the alleged period of disability. *Dousewicz, supra,* 646 F.2d at 774 (quoting *Stark v. Weinberger,* 497 F.2d 1092, 1097 (7th Cir. 1974)).

The reason for the diminished weight given to a treating physician's retrospective diagnosis can be found in the purpose behind the rule. "The opinion of a treating physician is accorded extra weight because

the continuity of treatment he provides and the doctor/patient relationship he develops place him in a unique position to make a complete and accurate diagnosis of his patient." *See Arnone, supra,* 882 F.2d at 41 (quoting *Mongeur v. Heckler,* 722 F.2d 1033, 1039 n. 2 (2d Cir.1983)). A retrospective opinion, by definition, cannot be based upon an ongoing physician-patient relationship because it refers to a period of time when no such relationship existed. It follows that because there was no physician treatment relationship during the relevant time period, a current treating physician is not in a "unique position to make a complete and accurate diagnosis" of a claimant's past medical condition. *Arnone, supra,* 882 F.2d at 41.

■ Here Dr. Zavalla–Macapagal was clearly plaintiff's treating physician after 1983. Indeed, the Secretary properly accorded conclusive weight to her opinion in determining that plaintiff was disabled since January 28, 1983. *See* Tr. at 108. However, because Dr. Zavalla–Macapagal was not plaintiff's treating physician during 1977–78, she is not in a "unique position" to evaluate Dr. Dumlao's records and give an assessment of plaintiff's condition during that time. Any other medical doctor could have evaluated those records and formed a retrospective diagnosis of the plaintiff. *See Arnone, supra,* 882 F.2d at 41. For this reason, her retrospective opinion that plaintiff was disabled in 1978 cannot and should not be given conclusive weight; rather, the proper inquiry is whether the opinion establishes the existence of a disability as of June 30, 1978 when it is considered in light of the entire record. *See Dousewicz, supra,* 646 F.2d at 774; *Jones, supra,* 614 F.Supp. at 280.

■ Dr. Dumlao's records of plaintiff's office visits constitute the only contemporaneous medical evidence of plaintiff's condition during the relevant time period, *see* Tr. at 217–22, and formed the basis for Dr. Zavalla–Macapagal's retrospective opinion.[1] However, a review of these records demonstrates that Dr. Dumlao made no express findings as to whether Ms. Rivera was disabled or the extent of any such disabilities if they existed. In addition, these records lack detailed findings about plaintiff's condition and appear to be recitals of plaintiff's complaints of pain and brief accounts of Dr. Dumlao's treatment and prescriptions. Since these records are of such limited utility, the Court cannot properly find that the Secretary's decision that they do not establish a disability as of 1978 is not supported by substantial evidence.

■ Nor does plaintiff's testimony at the evidentiary hearings support her argument that her condition was the same in 1978 as it was in 1983. For example, at the first hearing in 1985, Ms. Rivera testified that she was able to walk four or five blocks and do light cleaning and laundry. *See* Tr. at 37–39. But at the second evidentiary hearing in 1987, plaintiff stated that she could walk three to four blocks and that "lately" she had not been able to do housework, which supported an inference that her condition had worsened since 1985. *See* Tr. at 148–50.

■ Furthermore, plaintiff appeared at that hearing with a cane that she testified she had started using approximately one year before the hearing. *See* Tr. at 178; *see also* Tr. at 208. This clearly supported a finding of a deteriorating condition since no cane had been prescribed by Dr. Dumlao in 1978. *See* Tr. at 215–16. The Secretary could properly have concluded from this circumstance that her condition was not the same as it was in 1978, despite Dr. Zavalla–

1. The Secretary has offered no explanation for his failure to have any consulting physician examine Dr. Dumlao's records to assess the correctness of Dr. Zavalla–Macapagal's retrospective opinion. However, that circumstance is not and cannot be dispositive where, as here, the Court does not act as a *de novo* fact finder, but is required to uphold the Secretary's decision so long as it is supported by "substantial evidence."

In this connection, the Court notes that both ALJ Tannenbaum and the Appeals Council reviewed Dr. Dumlao's records and concluded that they did not support a finding of disability during the relevant period. *See* Tr. at 108 (Decision by the Appeals Council), 123 (ALJ's recommended Decision dated December 4, 1987).

Macapagal's retrospective opinion to the contrary.

The only other evidence of plaintiff's disabilities during 1977–78 is plaintiff's subjective complaints of pain from 1974 to the present. Congress has recently amended the Act to provide that "[a]n individual's statements as to pain or other symptoms shall not alone be conclusive evidence of disability ... there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques which show the existence of a medical impairment ... which could reasonably be expected to produce the pain or other symptom alleged and which, when considered with all evidence required to be furnished under this paragraph ... would lead to a conclusion that the individual is under a disability." 42 U.S.C. § 423(d)(5)(A) (Supp. V 1987).

■ The only medical findings that support plaintiff's complaints of pain are Dr. Dumlao's notes and Dr. Zavalla–Macapagal's retrospective opinion. However, Dr. Dumlao's notes do not themselves reflect that plaintiff was disabled in 1978 and Dr. Zavalla–Macapagal's retrospective diagnosis cannot be regarded as dispositive. Therefore, the Secretary was free to question the credibility of plaintiff's statements about her pain, "or to refuse to take them at face value." *Artrip v. Bowen*, 651 F.Supp. 376, 380 (S.D.N.Y.1987).[2]

■ The Court concludes that the Secretary's decision that Dr. Zavalla–Macapagal's retrospective diagnosis, considered in light of the entire record, does not establish

the existence of a disability as of June 30, 1978 is supported by substantial evidence.[3]

## CONCLUSION

Defendant's motion for judgment on the pleadings is granted and plaintiff's motion is denied. The Clerk of the Court is directed to close the case.

It is SO ORDERED.

---

2. The Court notes that the Appeals Council considered plaintiff's testimony to have been incredible. *See* Tr. at 109. Although reviewing tribunals generally may not make findings about a witness' credibility, the Court also takes note that the ALJ who held the first evidentiary hearing also concluded that plaintiff's testimony was not fully credible. *See* Tr. at 11.

3. Plaintiff also argues that the clinic itself should be recognized as plaintiff's "treating source" for purposes of the treating physicians rule. According to plaintiff, because she sought continuous treatment from two doctors at the same clinic Dr. Zavalla–Macapagal's opinion is really that of the clinic formed after a continu-

ous course of treatment. This argument completely overlooks the fact that a treating physician's opinion is given extra weight because of the doctor's *personal* knowledge of and involvement with his or her patient. A doctor who practices at a clinic does not become a treating physician with respect to every patient who has ever been treated by any doctor at the same clinic merely because of his association with that clinic.

Moreover, the notion that clinics or indeed any corporate entity can or should be regarded as capable of exercising professional medical responsibilities and judgments would hardly be consistent with state licensing requirements.