Isabel RIVERA, Plaintiff–Appellant,

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant–Appellee.

No. 424, Docket 90–6042.

United States Court of Appeals, Second Circuit.

Argued Oct. 30, 1990.

Decided Jan. 15, 1991.

---

Nancy Morawetz, Nancy Hebeisen and Anne Lee, Legal Interns, New York City (Anne Buckborough and Lisa Ferrari, Legal Interns, Washington Square Legal Services, New York City, on the brief), for plaintiff-appellant.

Sapna V. Raj, Asst. U.S. Atty., New York City (Otto J. Obermaier, U.S. Atty. and Edward T. Ferguson, III, Asst. U.S. Atty., New York City, on the brief), for defendant-appellee.

Before NEWMAN and PRATT, Circuit Judges, and LASKER, District Judge.*

---

* Hon. Morris E. Lasker, Senior District Court Judge of the United States District Court for the Southern District of New York, sitting by designation.

LASKER, District Judge.

Plaintiff-appellant Isabel Rivera's appeal challenges the determination of the Secretary of Health and Human Services (the "Secretary" of "HHS") that Rivera was not disabled on or before June 30, 1978. That date is when she last was insured under Title II of the Social Security Act ("the Act"), which provides disability benefits only for those insured under the Act. 42 U.S.C. §§ 423(a)(1)(A) and 423(c)(1) (1982). The Secretary's finding therefore resulted in a denial of Title II disability benefits for Rivera. The District Court upheld that finding on appeal as supported by substantial evidence. *Rivera v. Sullivan,* 727 F.Supp. 137 (S.D.N.Y.1989) (granting Secretary's motion for judgment on the pleadings).

Because we find the Secretary's decision is not supported by substantial evidence, we reverse and remand solely for the determination of benefits.

## BACKGROUND

Isabel Rivera was born in 1929 in Puerto Rico, where she received a fifth grade education before moving to New York. She neither speaks nor reads English.

Alleging arthritic and other disabilities, Rivera in 1983 applied for and was denied Title II disability insurance benefits. Rivera requested a hearing before an Administrative Law Judge ("ALJ"), which was held January 14, 1985. At the hearing, she testified that she had worked at a variety of jobs beginning in 1954, that she last worked packing appliances from 1970 to 1974, and that her job packing appliances required her to stand for eight hours per day and lift boxes weighing twenty five pounds or more. She said she left her job in 1974 because of her "back problem." At a later hearing she explained that she requested that she be discharged from her

job because she suffered pain and the lifting became "too heavy" for her.

Rivera was treated by two physicians, a Dr. Dumlao[1] (from May 1977 to August 1978) and a Dr. Zavalla–Macapagal (since March 1983). Dr. Dumlao did not testify at Rivera's administrative hearings, but her records were admitted and referred to by Dr. Zavalla–Macapagal; Dr. Zavalla–Macapagal in her Declaration stated that Rivera was now disabled, that her impairments had remained essentially the same from March 1983 to February 1987, and that "it is most probable" that Rivera's medical condition was "approximately the same" in 1977 as in 1983. The doctor expressed her opinion that Rivera had been unable to work "since at least May, 1977."[2]

The ALJ, considering only this evidence, found that Rivera was not disabled within the Social Security Act's definition. Rivera appealed to the Appeals Council of HHS and subsequently to the District Court, which remanded for further administrative proceedings. At a subsequent ALJ hearing on March 6, 1987, Rivera testified that "lately" she had been unable to do housework or cook. This second ALJ on April 15, 1987 found Rivera to have been disabled as of December 1974. Thereafter, HHS' Appeals Council withheld final decision and remanded for further factfinding. In October 1987 Rivera received yet another hearing at which new evidence including a current medical report was received. The ALJ who presided over the October hearing found Rivera disabled as of but not before January 28, 1983, and the Appeals Council and Secretary adopted the ALJ's findings. The Appeals Council stated, "Based upon the findings and conservative treatment by Dr. Dunlao, the Appeals Council concludes that while the claimant was seen for a number of conditions in 1977 and 1978, including osteoarthritis and a history of bronchial asthma, .... the

---

**1.** The record vacillates between two spellings of the initial physician's name, with some references to Dr. Dunlao, and some to Dr. Dumlao. We adopt the latter because that is the version in both parties' papers and in Judge Sprizzo's opinion; in any event the reference is to the same person.

**2.** The record also reveals examinations of Rivera by three physicians in 1983 and by one in 1987, all connected with her benefits application. However, none of these physicians expressed an opinion as to her condition in 1978 or before. *See Rivera,* 727 F.Supp. at 139–140.

claimant was not precluded from the performance of ... past relevant work prior to her date last insured of June 30, 1978."

The District Court affirmed the Secretary's finding as supported by substantial evidence. *Rivera,* 727 F.Supp. 137 (S.D.N.Y.1989).

The District Court ruled that a retrospective opinion of a currently treating physician " 'must be evaluated in terms of whether it is predicated upon a medically accepted clinical diagnostic technique and whether considered in light of the entire record, it establishes the existence of a physical impairment' during the alleged period of disability." *Id.* at 140 (quoting *Dousewicz v. Harris,* 646 F.2d 771, 774 (2d Cir.1981)). The District Court found that Dr. Dumlao's notes express no opinion concerning Rivera's possible disability, lack detailed findings and merely appear to recite Rivera's complaints and Dr. Dumlao's treatments. *Rivera,* 727 F.Supp. at 141. The court therefore found that Dr. Zavalla–Macapagal's opinion based on those notes should be given limited weight. *Id.* at 142.

The District Court also cited evidence that at her 1985 hearing, Rivera testified she could walk four to five blocks and do some cleaning and laundry; in her 1987 hearing she stated she could walk three to four blocks and that lately she had not been able to do housework. *Id.* at 141. Moreover, Rivera had begun using a cane roughly in 1986. *Id.* The District Court concluded that despite Dr. Zavalla–Macapagal's opinion, this evidence that Rivera's condition was degenerative supported the Secretary's conclusion that Rivera had become disabled after 1978. *Id.* at 141–42.

## DISCUSSION

■ Court review of the Secretary's findings is limited to assessing whether substantial evidence in the record supports those findings. *See Havas v. Bowen,* 804 F.2d 783, 785 (2d Cir.1986); *Wagner v. Secretary of HHS,* 906 F.2d 856, 860 (2d Cir.1990). Substantial evidence is "more than a mere scintilla;" it is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion."

*Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Wagner,* 906 F.2d at 860; *Mongeur v. Heckler,* 722 F.2d 1033, 1038 (2d Cir.1983).

Because the District Court's determination was governed by the substantial evidence standard, and because we must apply the same standard of review, "our focus is not so much on the district court's ruling as it is on the administrative ruling." *Wagner,* 906 F.2d at 860; *see Valente v. Secretary of HHS,* 733 F.2d 1037, 1041 (2d Cir. 1984).

To be eligible for disability benefits under Title II of the Act, a claimant must have been insured within the meaning of 42 U.S.C. § 423(c) at the onset date of his or her disability, and must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The claimant is entitled to benefits

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

A claimant "bears the initial burden of showing that his impairment prevents him from returning to his prior type of employment," but once the claimant has made such a showing "the burden shifts to the Secretary to prove the existence of alternative substantial gainful work which exists in the national economy and which the claimant could perform...." *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982). The record here provides no consideration of whether Mrs. Rivera was capable of performing "alternative substantial gainful

work" as of 1978; the Appeals Council simply found that Rivera did not meet her initial burden since her impairments "did not preclude the performance of the claimant's past relevant work for the period prior to January 28, 1983."

■ Rivera argues that her case is indistinguishable from prior cases in which this Court has reversed the Secretary's determinations of no disability at a prior date where a retrospective diagnosis by a current treating physician is the sole available medical testimony concerning the relevant period, and where that physician's opinion is that the claimant was disabled at the earlier date.[3] Indeed, claimants have won reversal of adverse decisions by the Secretary even where their condition is degenerative, making retrospective evaluation of their ability to work somewhat speculative, and even where some non-physician testimony or evidence suggests a possible ability to work at the relevant time. *See, e.g., Wagner*, 906 F.2d at 861.

■ As noted above, the District Court did consider Dr. Zavalla–Macapagal's opinion to determine whether " 'in light of the entire record, it establishes the existence of a physical impairment' during the alleged period of disability." *Rivera*, 727 F.Supp. at 140 (quoting *Dousewicz v. Harris*, 646 F.2d 771, 774 (2d Cir.1981)).[4] Since the District Court's opinion, however, this Court in *Wagner* has elaborated on the

weight to be given retrospective diagnoses by physicians. *Wagner* reversed the Secretary's finding of no disability when no medical opinion in evidence contradicted one doctor's retrospective diagnosis finding a disability. In so ruling, we held that while such medical opinions are not conclusive, "a circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion." *Wagner*, 906 F.2d at 862.[5]

■ The mere fact that, as here, a claimant's condition is degenerative does not render invalid a physician's retrospective opinion. In *Dousewicz*, 646 F.2d at 774–75, this Court reversed the Secretary's denial of benefits where a presently treating physician in 1973 testified that the claimant had "probably" been disabled since 1967. In that case the record contained no evidence other than that doctor's assessment concerning the asserted cause of the claimant's disability, chronic back pain. *Id.* While this court did find support for the Secretary's contention that the claimant's condition was degenerative and may have been less severe at the relevant earlier time, we nevertheless concluded that the doctor's opinion, uncontradicted by specific medical evidence to the contrary, compelled a finding for the claimant. *Id.*

In *McBrayer v. Secretary of Health and Human Services*, 712 F.2d 795, 799 (2d

---

**3.** It is the established rule of this Court that a treating physician's opinion concerning disability during the course of treatment binds the fact-finder if not contradicted by substantial evidence, and is entitled to extra weight even if it is contradicted by substantial evidence. *Schisler v. Bowen*, 851 F.2d 43, 47 (2d Cir.1988).

**4.** The District Court also noted but did not discuss the requirement that the physician's opinion be based on a "medically accepted clinical diagnostic technique." Although the government contends that "because Dr. Zavalla–Macapagal has not stated the grounds for her conclusory retrospective opinion," there is no evidence that she relied on accepted diagnostic techniques, Defendant–Appellee's Brief at 12, her Declaration in fact details the course of her treatment of Rivera as well as Dr. Dumlao's earlier treatment. This information indicates an adequate basis for Dr. Zavalla–Macapagal's opinion.

**5.** In *Wagner*, the claimant was continuously treated by the same doctor, but that doctor had failed to diagnose the medical cause of the claimant's disability until the condition worsened after the relevant period. The strength of our language in *Wagner* may have been influenced by the fact that the same doctor was involved throughout the claimant's treatment. Nevertheless, *Wagner*, like the case before us, concerned the question of the weight to be given a retrospective, rather than contemporaneous, diagnosis of a currently treating physician. Accordingly, its discussion of the quantum of non-medical evidence required to overcome medical opinion is to be read in conjunction with its predecessors, including *Dousewicz*.

In any event, even under the *Dousewicz* standard, there is insufficient evidence to rebut Dr. Zavalla–Macapagal's opinion. We discuss below the evidence relied on by the Secretary.

Cir.1983), this Court reversed the Secretary's determination that the claimant had not been disabled by blindness in 1951 where the claimant's vision continued to deteriorate into the 1960s and where the sole medical testimony came from a doctor whose involvement in the case began in 1974. That consulting physician stated that "this patient has been legally blind since birth." *Id.* at 797. The court ruled that a contrary conclusion was precluded in the absence of other medical evidence despite the claimant's continuously deteriorating vision and despite his testimony that he worked into the 1960s. *Id.* at 799. We stated, "deterioration as such is irrelevant if McBrayer was legally disabled in 1951, and nothing in the record suggests that he was not, as reported in no uncertain terms by [the claimant's subsequent physician]." *Id.* at 798.

■ The government argues that both medical evidence and Rivera's testimony contradict Dr. Zavalla–Macapagal's testimony that Rivera was disabled as of 1978. First, it contends that Dr. Dumlao's notes are inconsistent with a finding of disability as of 1978. However, as the government acknowledges, Dr. Dumlao's notes "expressed no opinion on the issue of disability." The absence of an opinion expressed by Dr. Dumlao regarding disability does not contradict Dr. Zavalla–Macapagal's explicit statement that Rivera did suffer from a disability in 1978.

The government also observes that Rivera's own testimony and the reports of consulting physicians who examined her indicate that her condition worsened over the years. Again, however, the opinions of this Court hold that the mere fact that a condition is degenerative does not establish that it may not have been disabling at an earlier time.

The government cites *Arnone v. Bowen*, 882 F.2d 34 (2d Cir.1989), as support for an administrative determination contrary to retrospective medical testimony. In that case, however, medical testimony and records were available from a variety of doctors before and after the relevant period, but from none during the insured period. Earlier doctors had diagnosed a disability, but later ones (with one exception) found improvement and did not testify as to a disability during the insured period. *Id.* at 40. There was no direct evidence concerning the period at issue. Given the substantial medical testimony that the claimant's condition may have improved during that period and had improved subsequently, as opposed to only one doctor's opinion that the claimant was disabled in the relevant period, the court held that substantial evidence supported the Secretary's finding that the claimant had not demonstrated a disability during the relevant period. *Id.*

■ In the case at hand, there is no medical testimony to rebut Dr. Zavalla–Macapagal's opinion, nor is there "overwhelmingly compelling" non-medical evidence to the contrary as required by *Wagner* in the absence of competing medical opinions. Dr. Dumlao's notes (upon which the Appeals Council avowedly based its opinion) are insufficiently thorough to provide a firm basis for inferring the absence of a disability, and do not indicate an opinion as to Rivera's inability to work. Moreover, as indicated above, while Rivera's testimony and consulting physicians' opinions do indicate that her condition is degenerative, that fact is not incompatible with the existence of an earlier disability. In sum, we conclude that the evidence of record does not contain the "substantial evidence" necessary to support the Secretary's determination, and accordingly we reverse his finding that Rivera was not disabled as of June 1978.

■ As we noted above, this Circuit has held that once the claimant demonstrates an inability to perform prior relevant work, the Secretary has the burden of showing the existence of alternative substantial gainful work which the claimant could have performed. Here, because the Secretary found that Rivera was not unable to perform her past relevant work prior to 1983, he did not determine whether alternative substantial gainful work which Rivera could perform existed in the national economy prior to 1978.

However, a review of the record fails to reveal any evidence which could support a finding that Rivera was capable of performing substantial gainful work which was available in the national economy. Indeed, the Secretary explicitly found that as of 1983 the claimant was not capable of performing such alternative work. Moreover, the retrospective diagnosis of Dr. Zavalla–Macapagal stated that Rivera's condition was approximately the same in 1977 as it was in 1983, and further stated without qualification that Rivera had been unable to work since 1977.

Given this evidence establishing Rivera's inability to perform her prior work as of 1978, and considering the unskilled nature of the claimant's earlier work, the failure of HHS to present any evidence to suggest that Rivera possesses other skills or for any reason would be capable of performing alternative substantial gainful work, and the length of time this litigation has already consumed, reversal and the immediate award of benefits is appropriate. *See Wagner*, 906 F.2d · at 862 (uncontradicted medical testimony that claimant was incapable of performing substantial gainful work entitled to deference and supports reversal); *Vargas v. Sullivan*, 898 F.2d 293, 296 (2d Cir.1990) (claimant's poor health and lack of education and language or other skills indicates "infinitesimal likelihood" of available employment and supports reversal); *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.1980) (reversal appropriate "when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose").

Accordingly, we reverse and remand solely for the calculation and payment of benefits.