Juan FELICIANO, Plaintiff,

v.

Shirley S. CHATER, Commissioner of Social Security, Defendant.

No. 94 CV 5230 (BDP).

United States District Court, S.D. New York.

June 11, 1996.

James M. Baker, Bronx Legal Services, New York City, for Plaintiff.

Sapna Raj, Asst. U.S. Atty., New York City, for Defendant.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

### FACTS

Plaintiff Juan Feliciano brought this action under 42 U.S.C. § 1383(c)(3) seeking judicial review of the final determination of defendant Commissioner of Social Security that Feliciano was not disabled and therefore not entitled to Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. Both parties have moved pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings. The only issue is whether the Commissioner has complied with the "treating physician" rule as codified by the Commissioner in 1991 at 20 C.F.R. § 416.927.

The following facts are not disputed. Feliciano is a 49–year old laborer with a fifth grade education obtained in his native Puerto Rico. He is literate in Spanish, but cannot speak English. He is separated from his wife and children, lives alone in a rented room in the Bronx, and is supported by a grant of public assistance. He came to the mainland United States from Puerto Rico in the early 1970s. He worked several years painting and fixing apartments for landlords. He then worked for four years as a "landscaper," planting trees, pouring concrete, etc. In a work-related vehicle accident in November 1987 he suffered back injuries, was hos-

pitalized and had surgery on his neck. He collected Workers' Compensation benefits for a period of time after the accident until 1991. He has not worked since the accident.

Since 1988, Feliciano has been treated at North Central Bronx Hospital for hypertension, diabetes mellitus, and injuries suffered in the accident. In 1991, and again in 1993, Feliciano's lumbosacral spine was x-rayed. There was no evidence of fracture or dislocation and the lordotic curve was maintained. Vertebral bodies and intervertebral disc spaces were intact. The pedicles and interpedicular distances were normal. The radiologist's impression was a normal lumbar spine.

Feliciano claims that he is unable to work because of chronic lower back pain caused by the accident. He states that he experiences the back pain "[a]lmost all the time," that it is made worse by lifting even 5–10 pounds, sitting or standing in excess of 15–30 minutes, or walking more than a few blocks. As a result of the pain, he claims that he spends most of his time in his room, reading or watching television. His daughter helps him cook and clean. He occasionally visits friends, attends church or plays dominoes with his friends in front of his building. He takes Motrin or Ibuprofen for the pain.

Feliciano filed an application for SSI benefits on April 22, 1991. The application was denied initially and on reconsideration, whereupon Feliciano requested a hearing before an administrative law judge ("ALJ"). After a hearing was held on October 15, 1991, the ALJ found that Feliciano suffered from diabetes, high blood pressure, high cholesterol and obesity, but was not disabled because he still retained the capacity to perform light work. Upon review of the ALJ's decision, the Appeals Council on September 25, 1992 found that the ALJ had failed to evaluate properly Feliciano's subjective complaints of low back pain and remanded the claim for a new hearing.

At the second hearing on December 15, 1992, Feliciano submitted the two reports of M.W. Pinon, M.D., a physician at North Central who had seen Feliciano every 3–4 months since 1990 for diabetes, hypertension, cigarette smoking, weight reduction, and

chronic lower back pain, as additional evidence of disability. Dr. Pinon reported that Feliciano suffered chronic lower back pain, but noted that Feliciano appeared to have good movement of his back and that there was no reported motor loss, muscles weakness or sensory and/or reflex loss. He opined, by history, that Feliciano, could sit continuously for 30 minutes, stand continuously for 30 minutes, walk for two blocks without stopping, lift up to 20 pounds, and take public transportation. He further stated that Feliciano's condition was one which could reasonably be expected to produce the pain alleged.

Following the hearing, the ALJ arranged for Feliciano to be examined by another physician, M. Mancheno, M.D., and a report of this examination was entered in the record. Dr. Mancheno examined Feliciano and reported that Feliciano walked normally and had no difficulty getting on the examination table, had full range of motion in his hips, and normal reflexes. He noted that straight leg raising was negative on the left, but positive at 60 degrees on the right, x-rays of the lumbosacral spine were negative, that his muscle power and tone were normal with no sign of atrophy or wasting. He reported that Feliciano had tenderness from L3 to S1 of his lumbosacral spine and had bilateral paraspinal muscle spasm, but there was not significant restriction in range of spinal motion. Dr. Mancheno's diagnostic impression was a possible "discogenic disorder of the LS spine" and opined that Feliciano's range of exertion was moderate in lifting/carrying, pushing/pulling, standing/walking and sitting.

On May 8, 1993, the ALJ found that Feliciano was not disabled because he could still perform light work. The ALJ rejected Dr. Pinon's opinion that Feliciano suffered from an impairment that significantly limited his physical ability to do basic work activities on the grounds that (1) Dr. Pinon was not, in fact, a treating physician, (2) his report did not contain adequate clinical findings, and (3) his views were contradicted by other substantial evidence of record, including the report of Dr. Mancheno, the consulting physician.

Upon review, the Appeals Council again vacated the ALJ's decision and remanded the case for a third hearing. The Appeals Council "observed" that Dr. Pinon was a treating physician and that his report, if credited, would establish that Feliciano was unable to perform light work because of limitations in his ability to stand and walk. It further stated that "apparently no attempt was made to obtain a clarifying statement as to how and why the claimant was so restricted nor were supporting clinical findings included. Accordingly, the Council concludes additional information is needed." The Appeals Council instructed the ALJ to obtain pertinent medical evidence from Feliciano's treating physician. It explained that this evidence should include clinical findings, the results of laboratory tests, a medical assessment of the Feliciano's ability to perform work-related activities, and should reflect what he can still do despite the alleged impairments. Finally, the Appeals Council directed the ALJ to obtain a consultative orthopedic examination with a medical assessment, if the evidence from Feliciano's treating physician did not satisfy evidentiary requirements specified in the regulations.

At a third hearing on December 2, 1993, Feliciano submitted two medical report forms completed by Sikha Guha, M.D., another physician at North Central. He reported that Feliciano had been a patient at North Central since October 1991 and suffered lower back pain, especially on climbing stairs and rising from a seated position. Dr. Guha stated that x-rays were still normal, and a straight leg raising test and neurological examination were negative. He noted that Feliciano ambulated with a cane, that his spinal motion was restricted "in all directions," and there was paraspinal muscle spasm in the lower lumbar region on the right. Dr. Guha opined that Feliciano could sit 1–2 hours, stand 1–3 hours, alternately sit or stand 2–3 hours, lift up to 10 pounds, walk 3–4 blocks, and that he had to lie down during the day to relax his back. He further reported that Feliciano had no motor loss, muscle weakness or sensory and/or reflex loss, but had pain in grasping, pushing and pulling with his hands.

No further medical information was sought. On January 25, 1994, the ALJ denied Feliciano's claim on the grounds that the opinions of his treating physicians were not adequately supported by clinical findings and were not consistent with the medical evidence of record, including the most recent reports from North Central. In addition, the ALJ found that Feliciano's subjective complaints of pain were inconsistent with objective findings in the record as to his activities, medications and functional restrictions.

The Appeals Council denied Feliciano's request for review on May 20, 1994, on the ground that the ALJ considered the lack of clinical findings supporting the opinions of the treating physicians. Feliciano asserts that the Commissioner's decision must be reversed because no substantial evidence contradicted the evidence of Feliciano's treating physicians. He argues that (1) the opinions of his treating physicians are entitled to controlling weight under the "treating physician" rule, and (2) even if not entitled to controlling weight, the opinions of treating physicians should be preferred over other evidence.

## DISCUSSION

It is not the function of a reviewing court to determine *de novo* whether a claimant is disabled. Assuming the Commissioner has applied proper legal principles, judicial review is limited to an assessment of whether the findings of fact are supported by substantial evidence. If they are supported by such evidence, they are conclusive. *See* 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (internal quotation and citation omitted).

A determination of disability for purposes of entitlement to SSI benefits requires a conclusion that a claimant's "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage

in any other kind of substantial gainful work which exists in the national economy ..." 42 U.S.C. §§ 423(d)(2)(A).

■■■ The Commissioner follows a five-step evaluation process for adjudication of disability claims. *See* 20 C.F.R. 416.920.

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix I of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity. Assuming that the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Rivera v. Schweiker,* 717 F.2d 719, 722 (2d Cir.1983) (quoting *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982)). The claimant bears the burden of proof as to steps one through four. The Commissioner bears the burden of proof on the final step—whether there is alternative work which exists in the national economy which the claimant could perform, considering not only his physical capability, but as well his age, his education, his experience and his training. *See Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980) (citations omitted). The Commissioner can meet her burden of showing that the applicant can perform other work by applying these factors under the Tables laid out in the Medical Vocation Guidelines. *See* 20 C.F.R. § 404, Subpt. P, App. 2; *Heckler v. Campbell,* 461 U.S. 458; 467–68, 103 S.Ct. 1952, 1957–58, 76 L.Ed.2d 66 (1983). The Tables reflect the existence of other work in the national economy for individuals whose residual functional capacity limits them to sustained work at different levels—medium, light, sedentary. Light work involves lifting as much as twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. *See* Social Security Ruling 83–10. To perform the full range of light work, a person must be able to work on his feet for up to two-thirds of the work day. *See* Social Security Ruling 83–10. In addition, the person must also be able to sit most of a work day and operate arm/hand or leg/foot controls. *See* Social Security Ruling 83–10.

■■■ In reaching a conclusion as to disability, both objective and subjective factors are to be considered. These include objective medical facts, diagnoses or medical opinions based on such facts, subjective evidence of pain or disability testified to by the claimant or other witnesses, and the claimant's educational background, age, and work experience. *See Parker,* 626 F.2d at 231 (citations omitted). These factors need not be given equal weight. The expert opinion of a claimant's treating physician is entitled to particular weight. *See Parker,* 626 F.2d at 231 (citations omitted).

■■■ Generally, a treating physician's expert opinion will be given more weight than other opinions because a treating physician is "most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospital stays." 20 C.F.R. § 416.927(d)(2). A treating physician's expert opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 416.927(d)(2). Unless a treating physician's expert opinion is entitled to controlling weight, its weight will be determined

by the following factors: (1) length of treatment relationship and frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability with relevant evidence, such as medical signs and laboratory findings; (4) consistency with the record as a whole; (5) area of specialization of the treating physician. *See* 20 C.F.R. § 416.927(d)(2)–(5).

Here, the ALJ followed the five-step evaluation procedure articulated by the Court of Appeals. Feliciano does not contest the ALJ's findings that he had a severe impairment, that he did not have an impairment or combination of impairments listed in, or medically equal to one listed in 20 C.F.R. Part 404, subpt. P, Regulations No. 4, or that he did not have the residual capacity to perform his past work. Feliciano disputes the ALJ's conclusion that he had the residual functional capacity to perform the physical exertion requirements of light work. He argues that the ALJ's determination was not supported by the medical evidence of record, arguing specifically that the ALJ failed to accord sufficient weight to the records of his treating physicians, Drs. Pinon and Guha.

The ALJ did not accord the reports of Feliciano's treating physicians controlling weight. He specifically found that Dr. Pinon's report does not "provide clinical findings corresponding to the restrictions referred to therein," and Dr. Guha's opinion "is not adequately supported by clinical or laboratory findings . . . ."

■ Feliciano argues that the opinions of his treating physicians were entitled to controlling weight. He argues that Drs. Pinon and Guha's findings of paraspinal muscle spasm, pain on straight leg raising at 60 degrees, pain on prolonged positioning and restricted range of motion well-support their diagnoses of chronic lower back pain. Neither physician, however, included objective clinical or laboratory findings in connection with Feliciano's complaint of chronic lower back pain. Rather, they diagnosed, by history, chronic back pain, muscle strain and spasm intermittent since 1987. Neither physician found any motor loss, muscle weakness, sensory or reflex loss, and a neurological examination and x-rays of Feliciano's

lumbosacral spine in 1991 and 1993 were normal. Accordingly, the opinions of Drs. Pinon and Guha are not entitled to controlling weight.

■ Feliciano argues next that the opinions of his treating physicians must nevertheless be accorded greater weight than that of the consulting physician, Dr. Mancheno. The ALJ declined to credit the opinions of Drs. Guha and Pinon. We review the ALJ's decision with the five factors of 20 C.F.R. § 416.927(d)(2)–(5) in mind.

With regard to the length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship, the ALJ specifically found that Feliciano had seen various physicians at North Central, and only occasionally was treated by the same physician. Indeed, Feliciano testified that "[t]here is a team of doctors that see me four or five times when I have gone. Sometimes I go and another doctor sees me, other times—there are different doctors." Although he testified that he had seen "the Indian doctor," an apparent reference to Dr. Guha, four or five times, Dr. Guha's report does not state how many times he saw Feliciano. In response to the question "Nature, frequency and length of contact," Dr. Guha wrote "56 [sic] y.o. male seen in Rehab. clinic at North Central Bronx Hosp. since 10/28/91 with h/o low back pain × 4 yrs. at that time." In addition, Feliciano's attorney conceded that Dr. Pinon treats Feliciano primarily for his diabetes and high blood pressure, and only more generally for his chronic lower back pain.

With regard to supportability, as discussed above, the opinions of Drs. Pinon and Guha are not well-supported with relevant evidence. Neither includes objective medical signs or laboratory findings supporting Feliciano's claims of chronic lower back pain.

With regard to consistency, the ALJ found that the opinions of Drs. Pinon and Guha as to Feliciano's functional limitations were not consistent with the record as a whole. He noted that the opinions were not consistent with objective medical evidence in the record, including records from North Central. Indeed, a neurological examination and x-rays

from 1991 and 1993 of Feliciano's lumbosacral spine were normal. He noted that Dr. Guha's opinion was not internally consistent. Dr. Guha reported that Feliciano experienced pain upon pushing and pulling with his right and left hands, could stand continuously for 2–3 hours, could lift and carry only 5 pounds, and could walk only 3–4 blocks. In a different report dated the same day, Dr. Guha reported that Feliciano could stand only 1–2 hours, but could lift and carry 10 pounds. Finally, the ALJ found that the opinions of Drs. Pinon and Guha were not consistent with each other or with Feliciano's testimony regarding his daily activities. Dr. Pinon opined, by history, that Feliciano could stand or sit for only 30 minutes, could walk only 2 blocks and could lift 20 pounds.

Feliciano testified, however, that he cooks sometimes, that he has no problem feeding himself or dressing himself, except to put on his shoes, that he spends most of the day reading or watching television, but sometimes goes to church, watches children in the neighborhood park, grocery shops (although he has the bags delivered), stands outside his building or plays dominoes with his friends. Feliciano further testified that he could lift and carry up to 15 pounds. He also testified that he takes only non-prescription drugs—Motrin and Ibuprofen—for the pain.

Finally, there is no evidence as to the area(s) of specialization of either Dr. Pinon or Dr. Guha.

■ Because none of the five factors weigh in favor of according the opinions of Drs. Pinon and Guha particular weight, the ALJ was not required to credit the opinions of Drs. Pinon and Guha as treating physicians. In addition, this Court finds that based upon Feliciano's own testimony regarding his daily activities and medication, medical reports from North Central and Dr. Mancheno's opinion, the ALJ's finding that Feliciano was not entitled to SSI benefits because he retains the capacity to perform light work is supported by substantial evidence.[1]

1. Although the ALJ did not obtain a consultative orthopedic examination with a medical assessment, as directed by the Appeals Council, it proved unnecessary because the record contained substantial evidence to support his findings.

In conclusion, plaintiff's motion for judgment on the pleadings reversing the administrative decision of the Commissioner is denied. Defendant's motion for judgment on the pleadings affirming the Commissioner's decision is granted. The Clerk of the Court is directed to enter judgment in favor of the defendant and to close the case.

SO ORDERED.