Lawrence J. VINCENT, Plaintiff,

v.

Donna E. SHALALA, Secretary of Health and Human Services, Defendant.

No. 92–CV–88.

United States District Court, N.D. New York.

Aug. 12, 1993.

Michael P. Oot, Syracuse, NY, for plaintiff.

Gary L. Sharpe, U.S. Atty., Syracuse, NY, for defendant (William H. Pease, Assistant U.S. Atty., of counsel).

## MEMORANDUM DECISION AND ORDER

CHOLAKIS, District Judge.

This Social Security disability appeal comes before the court on Report–Recommendation of Magistrate Judge Ralph W. Smith. The Magistrate Judge recommends that the case be remanded to the agency for further factual development. This court finds that the record before the court is adequate and contains substantial evidence supporting the Administrative Law Judge's (ALJ) denial of benefits. Accordingly, the decision of the ALJ shall be affirmed.

The claimant, Lawrence Vincent, is 44 years old. He has suffered from back pain and related problems since 1984, caused by a work-related back injury. He made several early attempts to return to work, but was unsuccessful each time due to back pain. His attending physician, Dr. Hootnick, prescribed medication and physical therapy, along with rest and weight reduction. Claimant has continued physical therapy sporadically, and medication constantly. Claimant also suffers recurrent prostatitis, probably resulting from his back injury, for which he receives antibiotics.

When it became clear that Mr. Vincent would never be able to return to the heavy work he had always done before, he earned his high school equivalency diploma and registered with Bryant and Stratton Business School to learn computer programming. Because his studies were often thwarted by his back pain and other problems, it took him nearly five years to complete the 18-month program.

In October 1989, several months before graduation, Mr. Vincent landed a computer job and worked at it for two weeks, until he was involved in an automobile accident. The accident injured his neck and aggravated his back problem, and he chose not to return to work. He did, however, finish school, completing the program in January 1990.

▮▮▮ Mr. Vincent first applied for Social Security disability benefits in 1987, but his application was denied. Administrative Transcript at 46–49 [hereinafter T]. It is uncontested that his insured status [1] expired on September 30, 1989, several weeks before he was involved in the aforementioned auto accident. Subsequently, Mr. Vincent again applied for Social Security disability benefits, the denial of which has resulted in the case now before the court.[2] Because Mr. Vincent's insured status expired on September 30, 1989, he bears the burden of proving that his current disability predates that expiration. He claims that it does, due to his 1984 back injury. He does not argue for consideration of the effects of his auto accident, nor should they be considered. Although Mr. Vincent's misfortune and bad timing arouse sympathy, because his accident occurred after the expiration of his insured status its effects are irrelevant to this determination and shall not sway the court.

## ISSUE PRESENTED

The issue centers on whether Mr. Vincent was disabled within the meaning of the Act prior to September 30, 1989. After a full hearing, the ALJ found that he was not. It falls to this court to determine whether the ALJ's decision is supported by substantial evidence.

1. To be eligible for Social Security disability benefits, a claimant must have been insured for those benefits within the meaning of the Social Security Act at the onset date of his disability. *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see* 42 U.S.C. § 423(c) (establishing criteria for Social Security disability coverage). Regardless of the severity of a claimant's *current* disability, he is eligible for benefits only if he was actually disabled *prior* to the expiration of his coverage. *Arnone v. Bowen*, 882 F.2d 34, 38 (2d Cir.1989).

2. Claimant filed for disability insurance benefits on May 1, 1990. His application was denied initially and on reconsideration. He requested a hearing, during which an Administrative Law Judge considered the case *de novo*. His decision that claimant was not disabled became the final decision of the Secretary on November 19, 1991, when the Appeals Council denied claimant's request for review.

## DISCUSSION

### A. Standard of Review of Agency Decisions

■ The District Court, when reviewing a decision by an ALJ, must undertake a plenary review of the record. The court is constrained to regard as conclusive any factual finding of the Secretary that is "supported by substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Rivera v. Sullivan*, 923 F.2d 964 (2d Cir.1991). "It is the function of the Secretary, not [this court], to resolve evidentiary conflicts and to appraise the credibility of witnesses...." *Carroll v. Secretary of Health & Human Services*, 705 F.2d 638, 642 (2d Cir.1983). Therefore, even if the Secretary's factual findings do not reflect what this court considers to be the preponderance of the evidence, as long as they are supported by substantial evidence they must be respected. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983). To act otherwise is to exceed the scope of review mandated by Congress.[3]

### B. The Decision of the ALJ is Supported By Substantial Evidence

The ALJ has found that Mr. Vincent was not disabled prior to September 30, 1989.

The ALJ determined that, while Mr. Vincent could not have resumed the type of work he had formerly done, he was capable of performing a sedentary job, of which there are a significant number in the national economy. Mr. Vincent avers that the ALJ's findings are not supported by substantial evidence.

Magistrate Judge Smith recommends that the case be remanded to the agency for further factual development. His recommendation is rejected. The record before the court contains substantial evidence supporting the ALJ's decision, and that decision shall be affirmed.

### C. The Social Security Act

■ An applicant for Social Security disability benefits is considered to be disabled for the purposes of the Social Security Act (Act) if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). This includes not only work the applicant did before his alleged disability, but *any* work for which he is qualified.[4]

■ The claimant bears the burden of proving that his disability prevents him from returning to his prior employment. *Rivera v. Sullivan*, 923 F.2d at 967. Once he has

---

3. Judge Meskill, dissenting in *Singletary v. Secretary of Health, Education & Welfare*, 623 F.2d 217 (2d Cir.1980), addresses the very human temptation to place individual need before statutory eligibility in these cases, and the danger of doing so:

   Denying statutory benefits to people in need of assistance is always an unpleasant task. The temptation to blur the distinction between individual need and statutory eligibility is strong; but our authority as judges often fails to match our sympathy for our fellow human beings. Absent constitutional transgressions, we have no more power to disregard the substantive and procedural limitations built into legislative benefit schemes than we have to change the nature and scope of the benefits themselves. It should not be otherwise. By in effect trying cases *de novo* at the district court and even the court of appeals level ... we reduce the entire administrative process to a

mere rehearsal for the actual determination, thereby ensuring that we will be seeing an ever-increasing number of these cases in the courts in years to come. *Id.* at 220. (Meskill, J., dissenting).

4. The Act provides that

   "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."
   42 U.S.C. § 423(d)(2)(A).

done so, however, the burden shifts to the Secretary to prove that there is still gainful work which the claimant can perform and that jobs of that type exist in significant numbers in the national economy. *Id.* In evaluating a claim for benefits, the Secretary must consider "(1) objective medical facts; (2) diagnoses or medical opinions based on these facts; (3) subjective evidence of pain and disability testified to by the claimant and family or others; and (4) the claimant's educational background, age, and work experience." *Rivera v. Schweiker,* 717 F.2d 719, 723 (2d Cir.1983).

It is to the above four areas which this court must look in reviewing the Secretary's decision that the Mr. Vincent was not disabled. *Id.* When engaging in such review, the court bears in mind that the intent of the Act is inclusion rather than exclusion, and that it should be liberally applied. *Id.*

### D. Analysis

The Secretary concedes that Mr. Vincent has met his burden by proving that his 1984 back injury prevented him from returning to his prior employment.[5] The burden has thus shifted to the Secretary to prove that there were still significant numbers of jobs that claimant was, at least prior to September 30, 1989, capable of performing.

The Supreme Court has held that the Secretary's burden must be divided into two parts, each to be evaluated separately. *Heckler v. Campbell,* 461 U.S. 458, 460–61, 103 S.Ct. 1952, 1953–54, 76 L.Ed.2d 66 (1982). First, the ALJ must assess the claimant's job qualifications, considering his or her "physical ability, age, education and work experience." *Id.* at 460, 103 S.Ct. at 1954. In the present case, the ALJ found that Mr. Vincent was capable of performing sedentary work. Second, the ALJ must determine "whether jobs exist in the national economy that a person having the claimant's qualifications could perform." *Id.* at 461, 103 S.Ct. at 1954. Using the medical-vocational guidelines promulgated by the Secretary of

Health and Human Services,[6] the ALJ in the present case determined that there was a substantial number of jobs that Mr. Vincent could have done. This court must evaluate whether there is substantial evidence to support the ALJ's finding on each prong of the Supreme Court's test.

**1. The ALJ's finding that claimant was capable of doing sedentary work is supported by substantial evidence.**

▪ After reviewing the entire record, this court finds that there is substantial evidence supporting the ALJ's finding that Mr. Vincent was capable of doing sedentary work. This conclusion follows from the objective medical facts, diagnoses and medical opinions based on those facts, evidence of subjective pain, and inferences drawn from the record as a whole.

#### a. Doctors' Reports

A close reading of the record kept by Mr. Vincent's attending physician, Dr. Hootnick, reveals the following observations:

January 23, 1985: "[Patient] could probably do a sitting job." T at 172.

November 5, 1986: "... I think he's pretty much back to his usual level of activity." T at 176.

March 20, 1987: "... [Patient] feels like he's 100% better than he was a year ago." T at 177.

May 12, 1987: "[Patient] is *partially* disabled at this point and will continue on being partially disabled on a permanent basis from any kind of heavy activities." T at 177. (Emphasis added.)

March 17, 1988: "[Patient] is getting along with a minor chronic backache." T at 179.

Subsequent to an MRI, another physician who was interpreting the results found "no specific evidence for herniated disc ... [or] for nerve root compression." T at 187. Still another physician, who was treating Mr. Vincent on a regular basis for prostatitis wrote in a letter to the Office of Vocational Rehabil-

---

5. Mr. Vincent's pre-injury employment history consisted of jobs requiring strenuous lifting and carrying. All of the physicians who have examined him agree that such work is now out of the question.

6. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1.

itation: "... I think that he is not disabled [by the prostatitis] in terms of being able to continue in school. I think that he probably still has a significant disability based on his back problem, but I would refer you to Dr. Hootnick for details of this." T at 221. Taken together, these statements could lead a reasonable mind to conclude that Mr. Vincent could handle a sedentary job.

█ Mr. Vincent contends that the ALJ did not place enough emphasis on the Workers Compensation reports completed by Dr. Hootnick. On some of those forms the doctor had indicated that Mr. Vincent was totally disabled. T at 189, 190, 194–99. Under the Social Security regulations, however, the ALJ is not in any way bound by the Workers Compensation forms. The regulations state:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision.... We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

20 C.F.R. § 404.1504. The ALJ found that "these reports [were] clearly a Workers Compensation opinion that [Mr. Vincent] cannot perform his past relevant work." Decision of ALJ at 3. In light of the language of the regulations, it was perfectly appropriate for the ALJ to weight the reports as he saw fit.

The ALJ also considered Mr. Vincent's subjective complaints of pain, finding that it had been adequately controlled by medication. Decision of ALJ at 4. There is support for this conclusion in the doctors' reports. Dr. Hootnick's notes of June 23, 1987 indicate that the "[patient] found that Norgesic is helpful to him...." T at 178. There are many annotations thereafter indicating refills of the Norgesic prescription. T at 178–81. Mr. Vincent also took several other medications, including Tylenol with codeine. With the help of these medications he was able to dress and bathe himself, do some housework, attend school, and work at his ill-fated computer job. It was not unreasonable for the ALJ to find that Mr. Vincent's pain could be controlled with medication.

Although the evidence in the doctors' records preponderates toward a finding of disability, the above excerpts indicate that Mr. Vincent was, in the opinions of at least some doctors, able to handle sedentary jobs during the relevant time period.

**b. The Hearing**

It is necessary to lean heavily on the doctors' notes and reports because so little was added to the record by the administrative hearing. The ALJ's questions focused exclusively on the present, and he seems to have reached his conclusion based partially on the assumption that if Mr. Vincent is able to engage in certain activities now, when he is supposed to be worse off than he was before the car accident, he must have been able to do even more before then.[7]

Mr. Vincent was represented by counsel at the hearing, but counsel's questions likewise failed to shed any light on Mr. Vincent's earlier condition. Counsel focused solely on Mr. Vincent's current condition, without inquiring into what he could or couldn't do prior to September 30, 1989, such as the specific problems that kept him from completing his 18–month computer training program on time, how far and how often he could drive, etc.

Mr. Vincent did his best to make up for these deficiencies in a short statement at the end of the hearing, but without the guidance of specific, probing questions he was unable to contribute any useful information.

**c. Other Factors**

Support for the ALJ's decision may also be found in Dr. Hootnick's consistent encouragement of Mr. Vincent to continue his computer education, as reflected by the doctor's office notes. It is reasonable to infer from the following remarks that the doctor consid-

7. "Even since the time claimant was last insured, and his complaints of increased back pain and neck pain since the October 1989 motor vehicle accident, he is able to spend two to three hours per day reading computer magazines and another three hours per day working on his home computer to improve his programming skills." Decision of ALJ at 3.

ered Mr. Vincent capable of performing a sedentary computer job:

> November 5, 1986: "I would much prefer that [the patient] continue on in school because he needs a profession." T at 176. August 4, 1987: "I want him to start school again in September." T at 178. June 12, 1989: "[Patient] is due to graduate from school at Christmas of 1989. We are all hoping he does well." T at 182.

And in an April 10, 1989 letter to the Office of Vocational Rehabilitation, Dr. Hootnick wrote: "I am pleased that Lawrence is doing well, especially with regard to his vocational rehabilitation as he really needs this retraining." T at 166.

■ Furthermore, Mr. Vincent did find and successfully perform a computer-related job for two weeks, until the car accident set him back again. Although it is not certain that Mr. Vincent would have been able to continue at this job had the accident never happened, the fact that he worked at it for two weeks is evidence that he was able to do sedentary work before his car accident.[8]

**2. The Medical–Vocational Guidelines Establish That There Was a Significant Number of Jobs in the National Economy Which Claimant Could Have Performed.**

■ Under the second part of the Supreme Court's test, the Secretary bears the burden of showing that jobs exist for which a particular claimant is qualified. *Heckler v. Campbell,* 461 U.S. 458, 461, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). Prior to 1978, at each hearing vocational experts were called to testify as to whether such jobs existed. The results, however, were inconsistent, so

"[t]o improve both the uniformity and efficiency of this determination, the Secretary promulgated medical-vocational guidelines as part of the 1978 regulations." *Id.* These guidelines "consist of a matrix of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of the factors exist in significant numbers in the national economy."[9] *Id.* at 461–62, 103 S.Ct. at 1954–55. When a claimant's abilities and limitations can be accurately described by the guidelines, i.e., when there are no particular limitations that call for individual consideration of a claimant,[10] the guidelines "direct a conclusion as to whether work exists that the claimant could perform. If such work exists, the claimant is not considered disabled." *Id.* at 462, 103 S.Ct. at 1953. When the guidelines are properly applied to a claimant, and the ALJ thereby determines that a significant number of jobs exists that claimant can perform, the guidelines are considered to be substantial evidence in support of that finding.[11] *Id.* at 464, 103 S.Ct. at 1955.

■ Where a claimant is limited to sedentary work, is under 44 years of age, has a high school education and non-transferable work skills, the guidelines dictate that he is not disabled. During the relevant period prior to September 30, 1989, the claimant in the present case was under 44 years old. He obtained a high school equivalency diploma, and some computer training, and even though his manual labor skills were not transferable, the guidelines indicate that there was a significant number of jobs he could have done.[12]

---

**8.** Although the period of time that Mr. Vincent held this job came after his insured status had expired, inferences drawn from post-expiration evidence may be used to support the finding that claimant was not disabled prior to expiration. *See Arnone,* 882 F.2d at 38 (Evidence that claimant was disabled *after* expiration of insured status "could conceivably support a finding" that claimant had been disabled prior to expiration.")

**9.** *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1.

**10.** The guidelines apply "only when they describe a claimant's abilities and limitations accurately." *Heckler,* 461 U.S. at 462 n. 5, 103 S.Ct. at 1955 n. 5. If they do not, the claimant's

particular limitations must be taken into account. *Id.*

**11.** Because "the types and numbers of jobs that exist in the national economy" is a general factual issue, it "may be resolved as fairly through rulemaking as by introducing the testimony of vocational experts at each disability hearing." *Id.* at 468, 103 S.Ct. at 1958.

**12.** 20 C.F.R. Pt. 404, Subpt. P.App. 2, Table 1, Rules 201.27 and 201.28. Even if claimant had not advanced his education at all, he would not have been disabled under the guidelines. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, Rule 201.25.

The ALJ correctly applied the guidelines to Mr. Vincent, and by doing so the ALJ met his burden of showing that a significant number of jobs existed for which claimant was qualified.

**3. The Court Rejects the Magistrate Judge's Report–Recommendation.**

The Magistrate Judge, in his report-recommendation, has exceeded the scope of review authorized by Congress. Although evidence does exist on the record which could support a finding that Mr. Vincent was disabled prior to September 30, 1989, it is not the function of the reviewing court to reweigh the evidence. *Carroll,* 705 F.2d at 642. The ALJ is entrusted with the power to weigh the evidence and assess the credibility of witnesses. *Id.* The court is confined to the limited role of assessing whether the ALJ's decision is supported by substantial evidence. 42 U.S.C. § 405(g). Because there is substantial evidence to support the ALJ's decision in the present case, a remand is not called for. Therefore, the magistrate judge's report-recommendation is rejected in its entirety.

### CONCLUSION

The findings of the ALJ are supported by substantial evidence and his decision is hereby affirmed.

IT IS SO ORDERED.

