**Margaret M. MACCIACHERA, Plaintiff,**

v.

**Donna SHALALA, Secretary of Health
and Human Services, Defendant.**

**No. 94–CV–0001.**

United States District Court,
N.D. New York.

July 25, 1995.

**18.**  *See* Plf's Ex. 1.4B;  Defs' Hearing Ex. A.

**19.**  *See* Plaintiff's Ex. 1.6B.

Peter A. Orville, Vestal, NY, for plaintiff.

Thomas J. Maroney, U.S. Atty., N.D.N.Y., Syracuse, NY (William H. Pease, Asst. U.S. Atty., of counsel), for defendant.

## MEMORANDUM DECISION
## AND ORDER

McAVOY, Chief Judge.

Plaintiff Margaret Macciachera brought this suit against the above captioned defendant under section 205(g) of the Social Security Act, as amended, 42 U.S.C. section 405(g), to review a final determination of the Secretary of Health and Human Services ("Secretary"), denying in part the plaintiff's claim of Social Security Disability and Supplemental Security Income benefits ("SSI").

This matter was referred to Magistrate Judge David Hurd pursuant to a standing order dated March 22, 1984, setting forth the procedure to be followed in appeals from a denial of Social Security benefits. Plaintiff commenced the present action in Federal Court on January 3, 1994, seeking review of the Secretary's decision.

After considering the issues and the record as a whole, the magistrate judge issued a report recommendation, dated November 8, 1994, in which he agreed that the medical record supported a conclusion of total disability, but as to the date of onset, the magistrate judge found that the record supported no other conclusion than the onset date alleged by plaintiff. The magistrate recommended that this case be remanded to the Secretary solely for the calculation of benefits from an onset date of December 1, 1988. Defendant subsequently filed objections to the magistrate's report and recommendation on November 23, 1994 and plaintiff filed a response to defendant's objections on December 12, 1994. This matter was referred to the United States District Court for the Northern District of New York on November 30, 1994. The court herein addresses the objections and responses raised by the parties to the magistrate-judge's Report–Recommendation.

## I. BACKGROUND

### A. Procedural History

Plaintiff initially applied for SSI benefits on January 14, 1987. Her initial application was denied on January 4, 1988. Subsequently, plaintiff received notice that she was a member of the *Stieberger* class[1]. Plaintiff

---

1. *See, Stieberger v. Heckler,* 615 F.Supp. 1315 (S.D.N.Y.1985), *vacated sub nom., Stieberger v.* *Bowen,* 801 F.2d 29 (2d Cir.1986) (The class in *Stieberger* comprises all New York State Resi-

then reapplied for benefits on September 26, 1991, alleging an onset date of December 1, 1988. After a hearing on February 24, 1993, plaintiff received a favorable decision finding her disabled as of August 16, 1990. Administrative Law Judge Alfred Tyminski ("ALJ") made ten findings in his decision concluding that "the claimant's physical impairments were augmented by severe mental impairments which in combination, would preclude all substantial gainful activity." ALJ Tyminski found "Claimant also became unable to perform any other work which exists in significant numbers in the national economy." (Tr. 22–23)

The only issue Plaintiff raised on her appeal from the administrative hearing concerns the ALJ's determination that August 16, 1990 was the onset date of her disability. The Appeals Council denied her appeal on November 4, 1993 and plaintiff thereafter commenced the present action in federal court on January 3, 1994, seeking review of the Secretary's decision.

### B. The ALJ's Analysis

The regulations of the Secretary mandate that the ALJ follow a five step evaluation process to determine if an individual is disabled. See, 20 C.F.R. section 404.1520. The five steps were discussed at length in the magistrate judge's report and recommendation and the parties have no dispute with respect to the application of the evaluation steps in the instant action; the parties merely dispute the ALJ's onset date determination arrived at under steps 4 and 5.

In the first step of the evaluation, the ALJ found the claimant-plaintiff not to have engaged in substantial gainful employment since December 1, 1988. In the second step, the ALJ made the determination that the claimant had a severe impairment. Under the third step, the ALJ found that the claimant was not *per se* disabled, as her impairments did not meet or equal an impairment listed in Appendix I, subpart P, 20 C.F.R. section 404.1520(d).

Step four, pursuant to 20 C.F.R. 404.1520(e), called upon the ALJ to determine whether the claimant retained the ability to perform her past relevant work as a bookkeeper, and if not, then step five required the ALJ to determine whether there was any other work which existed in significant numbers in the national economy. See, 20 C.F.R. section 404.1566(a), (b); *New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir1990). Under step four, the ALJ found the claimant unable to perform her past relevant work as a bookkeeper since August 16, 1990. Further, under step five, the ALJ found no work in significant numbers to exist in the national economy which plaintiff could perform after August 16, 1990. As the Court reviews the ALJ's determination it must find that each step in this evaluation was supported by substantial evidence. Again, neither party disputes the ALJ's determination that plaintiff is disabled: Plaintiff seeks review only of the ALJ's onset date.

## II. DISCUSSION

### A. Standard of Review

The court's review of the Secretary's determination is limited to determining whether such findings are supported by substantial evidence within the administrative record. See, 42 U.S.C. section 405(g); see also *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir.1991). A finding supported by substantial evidence will be deemed conclusive. *Id.* In the context of Social Security cases, the Supreme Court has noted that the phrase "substantial evidence" requires more than a mere scintilla; rather, it has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938)) *and Williams on Behalf of Williams v. Bowen*, 859 F.2d 255 (2d Cir. 1988). The scope of the court's review in-

---

dents denied new or continued disability benefits since October 1981 with respect to the Secretary denying or terminating benefits under administration policies inconsistent with judicial deci-

sions. In effect, this dealt with the Secretary's de facto policy of non-acquiescence in the law of the Second Circuit).

volves determining both whether the Secretary has applied the correct legal standard, and whether the determination is supported by substantial evidence. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.1982); *Cruz v. Sullivan*, 912 F.2d 8 (2d Cir.1990); *Vincent v. Shalala*, 830 F.Supp. 126, 129 (N.D.N.Y.1993) (quoting *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987)).

## B. Application of the Standard

■ Upon review of the record, the magistrate judge's report, and the parties objections thereto, this court concludes that substantial evidence compels a different conclusion than the one reached by the Administrative Law Judge. While the record, which contains numerous medical examinations, does support the finding that the plaintiff suffers a total disability, no where in the record does evidence suggest an August 16, 1990 onset date. To the contrary, the record details that the claimant was examined by over ten doctors, including two neurologists, two orthopedic surgeons and an ear, nose and throat specialist, as well as two physical therapists. All these examinations lend support to an earlier onset date than the one reached by the ALJ, and furthermore, this evidence conforms far more closely with the date alleged by plaintiff.

### 1. The Evidence Provided by the Treating Physician

■ In 1991, the Secretary issued regulations designed to alter the focus of the "treating physician rule" followed in this circuit[2]. *See, Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir.1991); *Schisler v. Heckler*, 787 F.2d 76, 81 (2d Cir.1986) *and Bluvband v. Heckler*, 730 F.2d 886, 892–93 (2d Cir.1984). These new regulations were meant to alter the focus of the treating physician rule and replace the previously conclusive power of a treating physician's opinion with a more scaled approach, requiring the ALJ to weigh each doctor's opinion in the record in context. The pertinent portions of these regulations

are entitled *Evaluating Medical Opinions About Your Impairment(s) or Disability.* 20 C.F.R. 404.1527(d)(2). The Second Circuit initially applied these regulations in *Schisler v. Sullivan*, 3 F.3d 563 (2d Cir.1993).

Under these regulations, six factors are weighed in assessing medical opinions: 1) the examining relationship; 2) the treatment relationship; 3) the supportability of medical findings in the record; 4) the consistency of an opinion with the record as a whole; 5) the physician's specialization with respect to the opinion; and 6) any other relevant factors. *See*, 20 C.F.R. 404.1527. Unless the Secretary gives a treating physician's opinion controlling weight under (d)(2) of this section, the Secretary will consider these six factors in deciding the weight given to any medical opinion. *See*, 404.1527(d).

Dr. Allen Alt, plaintiff's primary physician, has been treating the plaintiff since June 1983. Plaintiff has seen Dr. Alt on a monthly and bimonthly basis since December 1986. Dr. Alt conducted follow-up examinations of plaintiff for injuries received in her auto accident in 1986, he reviewed prescriptions, and he continues to treat her knee problems to the present. With respect to this claim, Dr. Alt concluded that plaintiff has a "total and permanent disability from any gainful employment" and that "this disability is permanent as it has changed little in the time span of greater than six years and I expect it to change little in the future." (Tr. at 248). With a finding of total disability, proper weight should be given to Dr. Alt's opinions rendered both prior to and following August 1990. Alt's conclusions run counter to the ALJ's August 16, 1990 onset date.

### 2. The Evidence Provided by Secondary Physician Opinions

The record as a whole further supports the conclusions of plaintiff's primary physician, as well as the recommendations of the magistrate judge.

---

**2.** The former rule in this circuit was that a treating physician's opinion on the subject of medical disability was i) binding on the fact-finder unless contradicted by substantial evidence; ii) entitled to some extra weight because the treating physi-

cian is usually more familiar with a claimant's medical condition than the other physicians ...; and iii) there was no requirement that the treating physician's medical testimony be supported by objective clinical or laboratory findings.

Dr. Saeed Bajwa, a neurosurgeon, examined plaintiff on several occasions in late 1986. After ordering a CT scan, Dr. Bajwa diagnosed a concussion of the inner ear and ordered therapy with Mr. Pastalan. (Tr at 139–140 and 235). Dr. Cesar Dionsio, an ear, nose & throat specialist, also examined plaintiff in late 1986. Dr. Dionsio indicated that plaintiff's left ear problems would either resolve in six to twelve months or would last the remainder of her life. (Tr. at 235). Plaintiff was then seen by Dr. Francis Hennessey, an orthopaedic surgeon, in February 1987. His diagnosis was acute cervical strain with Barre syndrome involving the unilateral headache, numbness of the left side of her face, ear and also her neck.

In April of 1987, plaintiff was examined by Dr. Kip Forsberg. Dr. Forsberg concluded that plaintiff has vestibular disequilibrium with supportive objective findings class— 30%. Dr. Forsberg found plaintiff a "30% whole person" as rated by "Rating of Mental and Physical Impairment" of the American Medical Association. The doctor concluded that "the vestibular complaint is the main consideration and its attended impairment to do work and perform other activities." (Tr. 225). Plaintiff was then referred to Dr. Paul Buckthal, a neurologist. Dr. Buckthal's May 4, 1987 examination revealed that plaintiff had tenderness at extreme rotation as well as flexation and extension of her neck. There was also tenderness to palpation over the left occipital notch. (Tr. at 228). Plaintiff then returned to Dr. Alt where his diagnosis revealed a cervical strain and headaches with vestibular imbalance. According to Dr. Alt, plaintiff had tenderness over the mid occiput.

On June 9, 1988, plaintiff was examined by Dr. Paul DeLuca. His examination revealed that plaintiff has tinnitus bilaterally and a reduction of hearing in her left ear. Dr. DeLuca also found that plaintiff had a loss of balance, chronic cervical strain, crania-cerebral trauma, possible cerebral concussion, post-traumatic vestibular dysfunction, moderately depressed with anxiety and considerable functional overlay. (Tr. at 232–233). Dr. DeLuca stated that "Since her symptoms have persisted for 2 years, I would regard them as permanent." (Tr. at 233).

The Office of Vocational Rehabilitation (OVR) also evaluated plaintiff. Her Demonstrated Vocational Evaluation (DVE) was scheduled to run from November 21, 1988 until December 16, 1988. However, plaintiff's involvement in the DVE program was terminated prior to the scheduled end of her assessment. While plaintiff had good attendance and punctuality, very good motivation and persistence in work effort, as well as above average to excellent academic skills, she was terminated because "it was felt that the client's limited, and progressive decrease in physical tolerance/endurance, posed a significant vocational handicap, and further vocational programming does not appear feasible at this time." (Tr. at 116). Plaintiff was terminated due to "recurring physical complaints of pain and discomfort associated with neck pain, vertigo, headaches, and observations of declining physical tolerance/endurance on sedentary work tasks and testing." (Tr. at 111).

Finally, on February 1, 1989, plaintiff was seen by Dr. Dominick Adornato, a neurosurgeon. Dr. Adornato found plaintiff to have a chronic cervical strain, post-traumatic vestibular dysfunction, post-traumatic migraine headaches. (Tr. at 238). Dr. Adornato concluded, "In my opinion, the vestibular dysfunction and post-traumatic headaches will be permanent. She should be considered temporarily and totally disabled." (Tr. at 238).

From the medical record as a whole, then, the court can not find substantial evidence in the record supporting the ALJ's onset date of August 16, 1990. There is substantial evidence, however, supporting an onset date of December 1988. Furthermore, the court finds that the evidence supporting a December 1988 onset is evidence that a reasonable mind would accept as adequate to support that conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938)); *Barrera v. Secretary of Health & Human Servs,* 872 F.Supp. 24 (E.D.N.Y.1995).

## C. Calculation on Remand

■ The court concurs with Magistrate Judge Hurd that the record supports an onset date of December 1, 1988, but finds itself prohibited from adopting the recommendation to remand for calculation of benefits as of that onset date. Instead, this court can only order recalculation of benefits for a period no greater than 12 months prior to plaintiff's filing date[3]. It follows then that the court can only remand for calculation of benefits from September 1990, since plaintiff filed for benefits on September 26, 1991. *See*, 42 U.S.C. section 423(b) and 20 C.F.R. section 404.621.

Since plaintiff filed an application for disability benefits on September 26, 1991, plaintiff may receive benefits for up to twelve months immediately before the month in which her application was filed. The earliest month which plaintiff may be and should be paid benefits from is September 1990.

## III. CONCLUSION

■ The medical record supports a conclusion of total disability and supports no other conclusion than an onset date of December 1, 1988, which is in turn consistent with the date alleged by plaintiff. In reviewing disability claims, a district court may affirm, modify or reverse the determination of the Secretary with or without remanding the case for a rehearing. *See*, 42 U.S.C. section 405(g). The court **HEREBY ORDERS** that the case be remanded to the Secretary solely for the calculation of benefits from 12 months prior to plaintiff's filing date of September 26, 1991.

**IT IS SO ORDERED.**

---

3.  **404.621  Filing after the first month you meet the requirements for benefits.**

(a)(1)(i) If you file an application for disability benefits ..., after the first month you could have been entitled to them, you may receive benefits for up to 12 months immediately before the month in which your application is filed.

20 C.F.R. section 404.621 (4–1–94).