**Joseph MARTONE, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

No. 99–CV–374.

United States District Court, N.D. New York.

Oct. 21, 1999.

Thomas P. McMorrow, Syracuse, NY, for Plaintiff.

Hon. Daniel J. French, United States Attorney, Northern District of New York, Syracuse, NY, William H. Pease, Assistant United States Attorney, of counsel.

### MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

This matter is brought pursuant to §§ 205(g) & 1631(b)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) & 1383(c)(3), to review a final determination of the Commissioner of Social Security denying the plaintiff's claim for Social Security Disability benefits. The parties have filed their briefs, including the Administrative Record on Appeal, and the matter has been submitted for decision without oral argument.

### I. PROCEDURAL HISTORY

Plaintiff applied for Social Security Disability Insurance benefits on February 5, 1996, alleging that he has been disabled since January 26, 1995 due to bilateral carpal tunnel syndrome ("CTS"), back, neck, and arm problems, a right lung impairment, and depression. His application was denied initially and on reconsideration. Plaintiff requested a hearing before an

Administrative Law Judge ("ALJ"), which was held on January 21, 1998. The ALJ issued an unfavorable decision on April 13, 1998. The Appeals Council denied review on January 20, 1999, making the ALJ's decision the final decision of the Commissioner. Plaintiff then commenced the instant action on March 11, 1999.

## II. FACTS

The facts stated in plaintiff's brief are adopted with any exceptions as noted.

## III. CONTENTIONS

Plaintiff contends that the ALJ's decision should be reversed and/or remanded because the ALJ:

1. Erred in determining plaintiff's educational level;

2. Improperly rejected plaintiff's subjective complaints of pain;

3. Erred in his assessment of plaintiff's psychological impairment; and

4. Failed to consider the combined effects of plaintiff's impairments.

## IV. DISCUSSION

### A. Standard of Review

A court's review of the Secretary's final decision is limited to determining whether there is substantial evidence in the record to support such decision. *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401, 91 S.Ct. 1420. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."

*Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir.1988)(citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir.1983)). However, a reviewing court must not substitute its interpretation of the administrative record so long as there exists substantial support for the decision in the record. *Williams*, 859 F.2d at 258.

Additionally, the scope of review involves determining both whether the Commissioner has applied the correct legal standard and whether the determination is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Thus, where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards, even if the ultimate decision may be arguable supported by substantial evidence, the Commissioner's decision may not be affirmed. *Id.* at 986.

The court has authority to reverse with or without remand. 42 U.S.C. § 405(g). Remand is appropriate where there are gaps in the record or further development of the evidence is needed. *See Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.1980); *Marcus v. Califano*, 615 F.2d 23 (2d Cir.1979)(remanded for reconsideration under standard that subjective evidence of disabling pain, if credited, may support a finding of disability); *Cutler v. Weinberger*, 516 F.2d 1282 (2d Cir.1975). Reversal is appropriate, however, when there is "persuasive proof of disability" in the record and remand for further evidentiary development would not serve any purpose. *Parker*, 626 F.2d at 235; *Simmons v. United States R.R. Retirement Bd.*, 982 F.2d 49, 57 (2d Cir.1992); *Carroll v. Secretary of Health & Human Servs.*, 705 F.2d 638, 644 (2d Cir.1983)(reversal without remand for additional evidence particularly appropriate where payment of benefits already delayed for four years; remand would likely result in further lengthening the "painfully slow process" of determining disability).

## B. *Five–Step Disability Determination*

The regulations mandate that the ALJ follow a five step evaluation process to determine whether an individual is disabled.[1] 20 C.F.R. §§ 404.1520, 416.920. Step One requires the ALJ to determine whether the claimant is presently engaging in substantial gainful activity ("SGA"). §§ 404.1520(b), 416.920(b). If a claimant is engaged in SGA, he will not be considered disabled. If the claimant is not engaged in SGA, Step Two requires the ALJ to determine whether the claimant has a severe impairment. §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from a severe impairment, Step Three requires the ALJ to determine whether the claimant's impairment meets or equals an impairment listed in Appendix 1, Subpart P. §§ 404.1520(d), 416.920(d). If the impairment meets or equals a listed impairment, the claimant is presumptively disabled. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir.1984). If the claimant is not presumptively disabled, at Step Four the ALJ must consider whether claimant's residual functional capacity ("RFC") precludes performance of their past relevant work. §§ 404.1520(e), 416.920(e). If the ALJ determines that the claimant cannot perform their past relevant work, then at Step Five, the ALJ determines whether the claimant can do any other work. §§ 404.1520(f), 416.920(f).

Where the alleged disability consists of a mental impairment, a special procedure must be followed at each level of administrative review "in evaluating the severity of mental impairments for adults ...." §§ 404.1520a(a), 416.920a(a). First, "the pertinent signs, symptoms, findings, functional limitations, and effects of treatments contained in [the] case record" must be recorded. §§ 404.1520a(b)(1), 416.920a(a). Second, if a mental impairment is determined to exist, then the Commissioner "must indicate whether certain medical findings which have been found especially relevant to the ability to work are present or absent." §§ 404.1520a(b)(2), 416.920a(b)(2). Next, the degree of functional loss resulting from the impairment must be rated on a scale ranging from no limitation to severe limitation which is incompatible with the ability to do work-like functions. §§ 404.1520a(b)(3), 416.920a(b)(3). Four factors are analyzed: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, and pace; and (4) deterioration or decompensation in work or work-like settings. *Id.* The next steps involve determining the severity of the mental impairment and whether it meets or equals a listed mental disorder. §§ 404.1520a(c), 416.920a(c). Finally, if the impairment is severe, but it does not meet or equal a listed mental disorder, an RFC assessment must be completed. §§ 404.1520a(c)(3), 416.920a(c)(3).

The claimant has the burden of showing that they cannot perform their past relevant work. *Ferraris*, 728 F.2d at 584. However, once the claimant meets that burden, benefits can only be denied by showing, by specific reference to medical evidence, that the claimant can perform some less demanding work. *See White v. Secretary of Health & Human Servs.*, 910 F.2d 64, 65 (2d Cir.1990); *Ferraris*, 728

---

1. A claimant will be considered disabled if he demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the claimant's [P]hysical or mental impairment or impairments [must be] of such severity that he is not only unable to do his [past relevant] work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.
42 U.S.C. § 423(d)(2)(A).

F.2d at 584. In making this showing the ALJ must consider the claimant's RFC, age, education, past work experience, and transferability of skills to determine if the claimant can perform other work existing in the national economy. §§ 404.1520(f), 416.920(f); *see also New York v. Sullivan,* 906 F.2d 910, 913 (2d Cir.1990); *Ferraris,* 728 F.2d at 585 (four factors used to determine if claimant can perform other work: age, education, physical ability, and work experience)(citing 42 U.S.C. § 423(d)(2)(A)). The ALJ is also under a duty to fully develop the record, even if the claimant is represented by counsel. *See Tejada v. Apfel,* 167 F.3d 770, 774 (2d Cir.1999).

### 1. *Residual Functional Capacity Standard of Review*

■ RFC is what a claimant is capable of doing despite his or her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The RFC is determined by considering all relevant evidence, consisting of, inter alia, physical abilities, symptoms including pain, and descriptions, including that of the claimant, of limitations which go beyond symptoms. §§ 404.1545, 416.945. Age, education, past work experience, and transferability of skills are vocational factors to be considered. Physical abilities are determined by evaluation of exertional and nonexertional limitations in performing a certain category of work activity on a regular and continuing basis. *Id.; see also* §§ 404.1567, 404.1569a, 416.967, 416.969a.

■ Thus, to determine whether a claimant can do a certain category of work, the ALJ must determine plaintiff's strength limitations, or exertional capacity, which includes the ability to sit, stand, walk, lift, carry, push and pull. §§ 404.1569a(a), 416.969a(a). Nonexertional limitations include "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." §§ 404.1569a(c)(vi),

416.969a(c)(vi). RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *LaPorta v. Bowen,* 737 F.Supp. 180, 183 (N.D.N.Y.1990). In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient. *Id.; Sullivan v. Secretary of Health & Human Servs.,* 666 F.Supp. 456, 460 (W.D.N.Y.1987); *Ferraris,* 728 F.2d at 588. The RFC is then used to determine particular types of work a claimant may be able to perform. §§ 404.1545(a), 416.945(a).

■ If the claimant can do work that exists in the national economy, a finding of not disabled will be made. §§ 404.1566(b), 416.966(b). However, if a claimant can do work that does not exist in the national economy, a finding of disability will be made. *Id.* Jobs in the national economy are classified by their physical exertion requirements as "sedentary," "light," "medium," "heavy," and "very heavy." §§ 404.1567, 416.967. Sedentary work requires the ability to lift no more than ten pounds, to sit for extended periods of time, and to walk and stand occasionally. §§ 404.1567(a), 416.967(a). Light work requires ability to lift no more than twenty pounds, with lifting or carrying up to 10–pound objects frequently. §§ 404.1567(b), 416.967(b). A job falls into the light category "when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls," although the weight lifted is small. *Id.* Furthermore, an individual who can do light work is considered able to do sedentary work, "unless there are additional limiting factors such as ... inability to sit for long periods of time." *Id.* "[W]ork exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions of the country." §§ 404.1566(a), 416.966(a). However, "[i]solated jobs that

exist only in very limited numbers in relatively few locations outside of the region where [the claimant] live[s] are not considered" to exist in the national economy. §§ 404.1566(b), 416.966(b).

### C. *Step Five—The Claimant is Capable of Performing Light Work*

In the instant case, at Step One the ALJ found that plaintiff has not engaged in SGA since September 10, 1995. At Steps Two and Three, the ALJ determined that plaintiff has cervical and lumbar strain and bilateral carpal tunnel syndrome, which, while severe, do not meet or equal a listed impairment. At Step Four, the ALJ decided that plaintiff is unable to perform his past relevant work as a welder, grinder, and boiler maker. Finally, at Step Five, the ALJ concluded that plaintiff retains the RFC for a full range of light work. Plaintiff contends that in determining that he can perform light work, the ALJ improperly rejected his subjective complaints of pain.

### 1. *Subjective Complaints of Pain*

■ Throughout the evaluation process, the ALJ must consider subjective complaints of pain. §§ 404.1529(a), (d), 416.929(a), (d). However, the ALJ is "not obliged to accept without question the credibility of such subjective evidence." *Marcus,* 615 F.2d at 27; *Peterson v. Gardner,* 391 F.2d 208, 209 (2d Cir.1968); *Spicer v. Califano,* 461 F.Supp. 40, 47–48 (N.D.N.Y.1978). There must be objective medical evidence which demonstrates that the claimant has a medical impairment "which could reasonably be expected to produce the pain or other symptoms alleged ...." §§ 404.1529(a), 416.929(a). If the medical evidence shows such an impairment, then the intensity and persistence of the claimant's symptoms must be evaluated so that a determination may be made regarding how the claimant's symptoms limit his/her capacity for work. §§ 404.1529(c), 416.929(c). "Since symptoms sometimes suggest a greater severity

of impairment than can be shown by objective medical evidence alone," all information submitted by a claimant concerning his/her symptoms, including pain, must be considered. §§ 404.1529(c)(3), 416.929(c)(3). Relevant factors include: (1) daily activities; (2) location, duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medications taken to relieve symptoms; (5) other treatment received to relieve symptoms; and (6) any other measures taken to relieve symptoms. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

■ After weighing the objective medical evidence, the claimant's demeanor, other indicia of credibility, as well as any inconsistencies between the medical evidence and a claimant's subjective complaints, the ALJ may decide to disregard the claimant's subjective opinion with respect to the degree of impairment. *See* §§ 404.1529(c)(4), 416.929(c)(4); *Pascariello v. Heckler,* 621 F.Supp. 1032, 1036 (S.D.N.Y.1985). An ALJ who rejects subjective testimony concerning pain and other symptoms "must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." *Brandon v. Bowen,* 666 F.Supp. 604, 608 (S.D.N.Y.1987).

In the present case, the ALJ considered plaintiff's allegations of: "[P]ain and stiffness of the cervical spine, numbness down both arms, pain of the thoracic spine, pain of the lower back, and weakness and numbness of the lower extremities," as well as plaintiff's testimony that "he cannot sit or stand for very long and [he] does not sleep more than 3 or 4 hours" per night. (Tr. at 16.) However, the ALJ found plaintiff's claims not fully credible in light of the objective evidence in the record and inconsistencies in plaintiff's own statements.

### a. *Plaintiff's Alleged Physical Impairments*

With respect to plaintiff's subjective claims concerning his neck, back, and lower extremities, substantial evidence supports the ALJ's determination that plaintiff's claims are not entirely credible. Plaintiff underwent an MRI of the cervical spine on April 17, 1995 which was normal except for a minimal bulging disc at C5–6, *Id.* at 216. Dr. William Stewart, a consulting neurosurgeon found this to be normal for plaintiff's age. *Id.* at 148. An x-ray taken of plaintiff's cervical spine on October 26, 1995 revealed no evidence of fracture, dislocation, or prevertebral soft tissue swelling. *Id.* at 160. An EMG revealed no evidence of cervical radiculopathy. *Id.* at 224. X-rays of the lumbar spine taken on July 8, 1996 showed mild degenerative disc disease in the mid and lower back. *Id.* at 252.

In addition to the objective medical tests performed, reports from plaintiff's treating physicians also belie plaintiff's claims of disabling pain. Dr. Patricia Meinhardt observed that plaintiff was "well developed, well nourished [and] in no acute distress." *Id.* at 176, 179, 189. She consistently found that plaintiff had full range of motion in his neck, *Id.* at 179, 189, and no tenderness in his back. *Id.* at 176, 180, 189. Dr. Meinhardt did note that plaintiff had decreased sensation in his upper and lower extremities. *Id.* She recommended hydrotherapy. *Id.* at 179, 188–89.

At an October 9, 1995 examination, Dr. Kenneth Hoelscher also observed normal range of motion in plaintiff's head and neck, with no evidence of spasms, taut bands, or trigger points in the back. *Id.* at 243. Dr. Hoelscher diagnosed plaintiff with a rotator cuff problem, in particular, pronator teres syndrome, based primarily on plaintiff's subjective claims of pain, as he detected no spasms in that area. *Id.* at 237, 244. In addition, an EMG showed no evidence of pronator syndrome. *Id.* at 224. In a January 17, 1996 examination, Dr. Hoelscher remarked that plaintiff continued to show adequate range of motion, though he complained of tenderness with pressure. *Id.* at 231. Dr. Hoelscher found a "definite increase in spasm and taut bands" in plaintiff's upper trapezius. *Id.* Despite these findings, Dr. Hoelscher consistently recommended hydrotherapy, physical therapy, and hot showers or soaks in a tub or whirlpool, rather than chiropractic treatment, which had not worked even after years of treatment. *Id.* at 227, 229, 232, 238. Dr. Hoelscher also recommended that a functional capacity evaluation be completed to assess plaintiff's ability to perform an appropriate job with his former employer, or alternatively, as part of the process at VESID. *Id.* at 230. Thus, it appears that Dr. Hoelscher believed that plaintiff was not totally disabled.

Dr. Robert Davies, plaintiff's chiropractor, reported that motor strength in the plaintiff's upper and lower extremities was only slightly limited, *Id.* at 198, his gait was normal, *Id.*, and his range of motion in the neck and back was not significantly limited, except lumbar flexion-extension. *Id.* at 205. Plaintiff's other doctors found decreased sensation in the upper and lower extremities, however, it was in a patchy distribution with no nerve root pattern. *Id.* at 174, 270. Dr. Burk Jubelt noted that plaintiff had normal muscle strength and tone in the upper and lower extremities. *Id.* at 174. Dr. Reinhard Bothe, a consulting examiner, noted that plaintiff's muscles were not tight or spastic, though plaintiff complained of pain over the entire cervical spine and upper back. *Id.* at 268. Dr. Bothe suspected that plaintiff engaged in "symptom enhancement" because the objective findings concerning the neck and back were inconsistent with plaintiff's complaints. *Id.* at 262. Finally, based upon plaintiff's records and tests, Dr. Stewart determined that plaintiff was not a candidate for surgery. *Id.* at 148.

With respect to plaintiff's carpal tunnel syndrome and arm problems, the evidence in the record is inconsistent. Dr. Stephen

Cost diagnosed plaintiff with bilateral CTS, *Id.* at 257, Dr. Jubelt found positive Tinel's and Phalen's on the left only, *Id.* at 174, and Dr. Peter Maxwell found the Tinel's positive bilaterally. *Id.* at 221. Dr. Hoelscher found that plaintiff had no pain in the ulnar, median, or redial nerves and the Tinel's sign was negative bilaterally. *Id.* at 243. Dr. Hoelscher stated that there is no physiological basis for the decreased sensation below the elbows and poor grip strength reported by plaintiff, since he has a lot of muscle mass in the forearms. *Id.* at 244. Dr. Bothe also found it odd that plaintiff's grip strength on the right was so poor, since he had greater muscle mass on the right. *Id.* at 268. Dr. Bothe also noted that the decreased sensation in the hands reported by plaintiff is not consistent with CTS. *Id.* at 268–69. Finally, Dr. Hoelscher did not believe that "the carpal tunnel syndrome is [plaintiff's] main problem at this point, since it isn't causing pain." *Id.* at 227. Plaintiff did undergo a left endoscopic carpal tunnel release, *Id.* at 274, and was scheduled to have the same procedure on the right hand. However, this is not determinative on the issue of whether or not plaintiff's physical condition and pain are so disabling that he cannot perform any work activity.

Plaintiff claimed that he cannot sit or stay in one position for an extended period of time. *Id.* at 43–45. However, he reported that he drove to Canada and he goes for a drive to deal with his frustrations. *Id.* at 45, 113, 219. He also stated that he takes walks in the mall. *Id.* at 113, 118.

### b. *Plaintiff's Alleged Psychological Impairments*

Plaintiff alleges that, in addition to his physical impairments, he suffers from depression. However, as the ALJ pointed out, *Id.* at 15, plaintiff never mentioned this condition at his administrative hearing, and there is no evidence that plaintiff has sought any treatment. In addition, although plaintiff was diagnosed with an affective disorder, *Id.* at 78, it was determined that plaintiff was not functionally limited as a result of this impairment. *Id.* at 59–60, 82. Plaintiff asserts that the fact that he was prescribed the medication Ambien supports his complaints of psychological problems. However, Ambien is commonly prescribed for insomnia, *see Physician's Desk Reference* 2930 (53d ed.1999), and in fact, plaintiff listed "sleeping" as his reason for taking Ambien. (Tr. at 134.) Finally, plaintiff points out remarks made by Dr. Meinhardt, Dr. Atman Singh, and Dr. Sibtain Syed which he claims demonstrates the severity of his psychological problems. However, the statements made by these doctors are all recounts of plaintiff's subjective claims. *See id.* at 137, 163, 219. Further, Dr. Syed described plaintiff's speech and thought processes as clear and coherent. *Id.* at 219. Plaintiff was cooperative and oriented to time, place, and persons. *Id.*

In summary, the objective medical evidence, the conservative treatment which plaintiff receives, as well as plaintiff's daily activities all belie plaintiff's claims of disabling pain and functional limitations. Therefore, substantial evidence supports the ALJ's decision to not fully credit plaintiff's subjective allegations.

### 2. *The Combined Effect of Plaintiff's Impairments*

If a claimant has multiple impairments, the combined effect of all impairments are considered "without regard to whether any such impairment, if considered separately, would be of sufficient severity." §§ 404.1523, 416.923. If a severe combination of impairments is found, "the combined impact of the impairments will be considered throughout the disability determination process." *Id.* If a severe combination of impairments is not found, then the claimant is determined not to be disabled. *Id.*

The ALJ's decision demonstrates that he considered all of evidence in the record

and concluded that plaintiff suffers from cervical and lumbar strain and bilateral CTS, which are severe impairments. (Tr. at 16.) The ALJ then considered the medical evidence and plaintiff's subjective claims of pain resulting from these impairments, and determined that the severity of plaintiff's impairments does not meet or equal a listed impairment. There is no evidence in the record, nor does plaintiff point to any, that plaintiff's combined impairments cause him to be unable to perform any substantial gainful activity. In fact, the RFC's completed, which considered plaintiff's diagnoses of CTS, and cervical and lumbar strain, both concluded that plaintiff is able to occasionally lift and carry up to twenty pounds, frequently lift and carry up to ten pounds, and sit, stand, or walk about six hours per day. *Id.* at 64, 90. Plaintiff's ability to perform fine manipulation was found to be limited, *Id.* at 66, and it was recommended that plaintiff avoid repetitive hand movements. *Id.* at 90. However, the regulations provide that many unskilled light jobs do not entail fine use of the fingers, but rather, only gross use of the hands. *See* S.S.R. 83–14. Thus, plaintiff's capabilities are consistent with the requirements of a full range of light work. *See* §§ 404.1567(b), 416.967(b)("To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of [the required] activities.")

### 3. *Using the Medical–Vocational Guidelines as a Framework*

At the final step in his evaluation, the ALJ considered plaintiff's age, education, and work experience together with his RFC to determine plaintiff's ability to perform other work in the national economy. The ALJ found that plaintiff is a younger individual with a high school education and an RFC for light work. The issue of transferability of work skills was found not material. The ALJ then applied these factors to Rules 202.20, 202.21, and 202.22 of the medical-vocational guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, which direct a conclusion of not disabled. Plaintiff indicates that, since he has nonexertional impairments, the ALJ erred in applying the medical-vocational guidelines. However, as has already been illustrated above, plaintiff's nonexertional limitations do not impose significant limitations on his ability to engage in substantial gainful activity. *See Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir.1999)(stating that the grids only provide only a framework for determining disability when a claimant's exertional impairments are compounded by significant nonexertional limitations); *see also* §§ 404.1569a(d), 416.969a(d). Accordingly, the ALJ did not err in applying the grids to determine disability in this case.[2]

### V. *CONCLUSION*

It is not disputed that plaintiff suffers from neck and back problems as well as bilateral carpal tunnel syndrome. However, the record, taken as a whole, does not substantiate plaintiff's allegations that these impairments render him unable to perform any substantial gainful activity. The ALJ's finding that plaintiff is capable of light work is supported by substantial evidence.

Accordingly, it is

ORDERED, that the ALJ's decision denying plaintiff Social Security Disability Insurance benefits is AFFIRMED.

IT IS SO ORDERED.

---

**2.** The plaintiff correctly asserts that the ALJ erroneously found that he is a high school graduate. However, the medical-vocational guidelines still direct a conclusion of not disabled when a claimant is a younger individual with a limited education and an RFC for light work. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 202.17–202.19. Thus, the ALJ's error does not warrant reversal.