**Christine M. STRATTON, Plaintiff,**

v.

**Carolyn W. COLVIN, Acting Commissioner of Social Security Administration, Defendant.**

No. 5:13–CV–329.

United States District Court,
N.D. New York.

Signed Oct. 7, 2014.

---

Iaconis Law Office, PLLC, of Counsel, Christopher D. Thorpe, Esq., Chittenango, NY, for Plaintiff.

Office of Regional General Counsel, Social Security Administration Region II, of Counsel, Jason P. Peck, Esq., New York, NY, for Defendant.

### MEMORANDUM—DECISION and ORDER

DAVID N. HURD, District Judge.

### I. INTRODUCTION

Plaintiff Christine M. Stratton ("Stratton" or "plaintiff") brings this action pursuant to §§ 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3), to review a final determination of the defendant Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have filed their briefs, including the Administrative Record on Appeal, and the matter has been submitted for decision without oral argument.[1]

### II. BACKGROUND

Stratton was born in May 1952, making her fifty-eight years old when she filed an application for DIB on August 11, 2010, claiming a period of disability beginning on December 20, 2008. That application was initially denied on October 15, 2010, and plaintiff subsequently requested a hearing. Her DIB application was consolidated with her application for SSI, which she filed on February 18, 2011. In August 2011 plaintiff amended her alleged onset date to May 27, 2010.

After several delays, an Administrative Law Judge ("ALJ") conducted a hearing on January 18, 2012. Stratton appeared by video and was represented by counsel. She claims that she is disabled as a result of increasingly debilitating bilateral carpal tunnel syndrome, thoracic outlet syndrome, knee pain, neck spasms and degenerative disc disease, daily headaches, prior cancer of the mouth, and lung problems. During the hearing, she also explained that she is tired throughout the day due to the medication she takes for the neck spasms and because restless leg syndrome keeps her awake at night.

The ALJ rendered a written decision on February 14, 2012, denying Stratton's claims. On March 15, 2012, she appealed the ALJ's decision to the Appeals Council. Plaintiff submitted additional evidence to the Appeals Council, including a functional capacity evaluation performed in April 2012 and endorsed by plaintiff's treating physician, Dr. Carmine Mastrolia ("Dr. Mastrolia"), in May 2012. See R. at 6, 496–99.[2] This assessment indicates a more limited functional capacity than that found by the ALJ.

The Appeals Council ultimately denied review on February 7, 2013. Thus, the

---

**1.** Pursuant to General Order No. 18 of the Northern District of New York, consideration of this matter will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

**2.** Citations to "R." refer to the Administrative Record. ECF No. 8.

ALJ's decision became the final decision of the Commissioner. Plaintiff filed this action on March 22, 2013.

## III. DISCUSSION

### A. Standard of Review

■ The scope of a court's review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence and the correct legal standards were applied. *Poupore v. Astrue,* 566 F.3d 303, 305 (2d Cir. 2009) (per curiam). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

■ "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen,* 859 F.2d 255, 258 (2d Cir.1988) (citing *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951)). If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive. *Id.* Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's decision must be upheld—even if the court's independent review of the evidence may differ from the Commissioner's. *See Rutherford v. Schweiker,* 685 F.2d 60, 62 (2d Cir.1982); *Rosado v. Sullivan,* 805 F.Supp. 147, 153 (S.D.N.Y.1992).

■ However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be af-firmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Martone v. Apfel,* 70 F.Supp.2d 145, 148 (N.D.N.Y.1999) (citing *Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir.1987)).

### B. Disability Determination—The Five Step Evaluation Process

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The ALJ must follow a five step evaluative process in determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At Step One, the ALJ must determine whether the claimant is engaging in substantial gainful activity. If the claimant is engaging in substantial gainful activity he is not disabled, and he is not entitled to benefits. *Id.* §§ 404.1520(b), 416.920(b).

If the claimant is not engaged is substantial gainful employment, then Step Two requires the ALJ to determine wheth-

er the claimant has a severe impairment or combination of impairments which significantly restricts his physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from a severe impairment, then Step Three requires the ALJ to determine whether, based solely on medical evidence, the impairment meets an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Pt. 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." *Martone*, 70 F.Supp.2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir.1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

■ If the claimant is not presumptively disabled, Step Four requires the ALJ to assess whether—despite the claimant's severe impairment(s)—he has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The burden of proof with regard to the first four steps is on the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir.1996). If it is determined that claimant cannot perform past relevant work, the burden shifts to the agency for Step Five. *Id.* This step requires the agency to examine whether the claimant can do any type of work. 20 C.F.R. §§ 404.1520(g), 416.920(g). The regulations provide that factors such as a claimant's age, physical ability, education, and previous work experience should be evaluated to determine whether a claimant has the RFC to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary. *Perez*, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2). "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; [she] need not provide additional evidence of the claimant's residual functional capacity."

*Poupore*, 566 F.3d at 306 (citing 20 C.F.R. § 404.1560(c)(2)).

## C. *Analysis*

The ALJ determined that Stratton had not engaged in substantial gainful activity since May 27, 2010, the amended alleged onset date. She then determined that plaintiff suffers from two severe impairments: "mild carpal tunnel syndrome and degenerative disc disease of the cervical spine." R. at 25. The ALJ noted her complaints of mild emphysema, thoracic outlet syndrome, right knee problems, and the relatively recent removal of a cancerous lesion in her mouth. However, these conditions were not deemed to be severe within the meaning of the Regulations.

The ALJ next found that neither of Stratton's severe impairments, or the combination thereof, constitutes an impairment within the Listings. She ultimately determined that plaintiff has an RFC that allows her "to lift, carry, push or pull 10 pounds at a time; sit for a full 8–hour workday; and stand or walk for up to 6 hours in an 8–hour workday." R. at 26. This RFC permits plaintiff to perform the full range of sedentary work. *See* 20 C.F.R. § 404.1567(a). In reaching this conclusion, the ALJ discredited plaintiff's assertions regarding the intensity, persistence, and limiting effects of her various ailments, asserting that such complaints were inconsistent with evidence and medical opinions in the record.

The ALJ also assigned "little weight" to a May 2011 assessment completed by Dr. Mastrolia and "no weight" to Dr. Mastrolia's conclusion in November 2010 that plaintiff is "disabled from 'substantial gainful activity.'" R. at 27–28, 433. Conversely, the ALJ afforded "some weight" to the opinion of Dr. Lisa Shirley–Williams ("Dr. Shirley–Williams"), who conducted a consultative medical examination of Strat-

ton in October 2010 and reported that she "has no restrictions." R. at 27, 409.

Finally, the ALJ determined that Stratton has the ability to perform her past relevant work as an administrative clerk and, therefore, is not disabled within the meaning of the Social Security Act.

Stratton argues that the ALJ made several errors warranting remand. Specifically, she claims the ALJ erred by: (1) failing to adequately develop the record after the hearing; (2) failing to deem her lung issues, thoracic outlet syndrome, or history of oral cancer as severe impairments; (3) determining that she has the RFC to perform the full range of sedentary work; (4) improperly evaluating the medical opinions of Dr. Mastrolia and Dr. Shirley–Williams; and (5) discounting her subjective complaints of severe limitations.

### 1. *Development of the Record*

During the January 18, 2012, hearing the ALJ agreed to leave the record open for ten days to permit Stratton's counsel to submit additional evidence. Five days later counsel submitted a "Memorandum In Support Of Claim" and a list of medications prescribed to plaintiff in 2011. R. at 253–84. However, the ALJ did not discuss these documents in her written decision, dated February 14, 2012. Plaintiff concludes that the ALJ has failed to properly develop the record.

■ It is well settled that an ALJ has an affirmative duty to develop the record. *Echevarria v. Sec'y of Health & Human Servs.,* 685 F.2d 751, 755 (2d Cir.1982); 20 C.F.R. § 404.1512(d). However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan,* 168 F.3d 72, 79 n. 5 (2d Cir.1999). Similarly, a

treating source need not be re-contacted when it is known that the source either cannot or will not provide the necessary information. *See* 20 C.F.R. §§ 404.1512(e), 416.912(e).

■ At the beginning of the ALJ hearing, Stratton's counsel advised that he had not yet submitted his summary memorandum because he "had hoped [his] client would get something from Dr. Mastrolia, who has been her primary care physician but, unfortunately, he has been impossible." R. at 519. At the end of the hearing, counsel reported that he would submit his memorandum within ten days and again noted that the reason for the delay was the refusal of plaintiff's physicians to supply assessments. Specifically, counsel claimed: "I did try to get assessments from Doctor, several doctors, and all of them have refused. They just, as a policy, don't give them. Mastrolia, she's seen for years and years and years, and she hoped that he would cooperate but—" R. at 541.

Similarly, on the "Note Endorsing Disability," dated November 1, 2010, Dr. Mastrolia specifically crossed out the portion of the form that reflected his willingness to provide "opinions and answer[ ] a questionnaire concerning fair limitations" of Stratton's conditions. R. at 433. This is consistent with counsel's August 2011 representation that "physicians have refused to perform" functional capacity assessments. R. at 233–34. Therefore, the ALJ reasonably believed that the medical sources would not provide additional assessments or opinions to assist in the disability determination. She was thus under no obligation to request or await further evidence.

Moreover, at the time the ALJ rendered her decision, the medical record contained a "Complete Medical Report (Physical)" from Dr. Mastrolia. R. at 414–16. The ALJ specifically cited to this document.

Also, the record contained a litany of treatment notes from various medical providers—including Dr. Mastrolia—as exhibits. Counsel's memorandum is mostly a summary of plaintiff's medical history based on those exhibits. It did not add to the evidence in the record. Similarly, the 2011 list of prescriptions was discussed with the ALJ during the hearing. R. at 529.

In short, Stratton's assertion that the ALJ failed to fulfill her duty to develop the record with respect to counsel's summary memorandum and the list of prescription medications is unpersuasive.

### 2. *Additional Evidence*

Although the ALJ properly developed the record at the time she issued her written decision, the Appeals Council failed to adequately consider and discuss evidence submitted by Stratton's counsel thereafter.

■ The Appeals Council is obligated to consider "new and material evidence." 20 C.F.R. § 404.970(b). New evidence is "material" if it is: "(1) relevant to the claimant's condition during the time period for which benefits were denied and (2) probative." *Pollard v. Halter,* 377 F.3d 183, 193 (2d Cir.2004) (internal quotation marks omitted). "The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." *Id.* (internal quotation marks omitted). Such evidence cannot be summarily deemed irrelevant simply because it was generated after the ALJ rendered a decision. *Id.* at 193–94.

■ The ALJ issued her written decision on February 14, 2012. In determining that Stratton has the RFC to perform

sedentary work, the ALJ afforded "little weight" to Dr. Mastrolia's medical opinion because "he did not provide function by function limitations" or "provide any basis for an assessment of limitations." R. at 27. The ALJ also gave "no weight" to Dr. Mastrolia's conclusory opinion that Stratton is disabled. R. at 28. This opinion was discounted primarily because "[i]t was not supported by any findings or narrative" and "consists of a single 'X' " in a checkbox. *Id.*

Despite his prior intransigence, Dr. Mastrolia referred plaintiff to Michele Enos, a Physical and Occupational Therapist, shortly after the ALJ rendered her decision. Ms. Enos performed a full Functional Capacity Evaluation on April 17, 2012. Her assessment is documented in an April 26, 2012, report, which contains a detailed evaluation of plaintiff's ability to lift, carry, push, pull, stand, sit, walk, bend, squat, kneel, and climb. *See* R. at 496–98. Ms. Enos noted plaintiff's complete cooperation with the evaluation, which indicates "good effort and valid test results." R. at 496. Based on her assessment and findings, Ms. Enos concluded that plaintiff's bilateral carpal tunnel syndrome, thoracic outlet syndrome, cervical spine and lumbar problems, and right knee pain prevent her from engaging in even sedentary work. Dr. Mastrolia reviewed Ms. Enos's findings and endorsed them. R. at 499. Plaintiff's counsel promptly submitted same to the Appeals Council.[3]

While the Appeals Council listed this report on the list of exhibits it considered before denying review, it failed to discuss it at all. Instead, it merely noted that "we considered the reasons you disagree with the decision and the additional evi-

---

**3.** Plaintiff's counsel provided this assessment to the Appeals Council and argued that it was an important piece of evidence to be consid-

ered on appeal. However, counsel has inexplicably failed to even mention this assessment in the brief submitted to this Court.

dence listed on the enclosed Order of Appeals Council. ... We found that this information does not provide a basis for changing the [ALJ]'s decision." R. at 7–8. Thus, there is no actual discussion of this report—the findings of which were specifically endorsed by plaintiff's treating physician—anywhere in the record. This assessment provides context to Dr. Mastrolia's opinion and specifically details the physical limitations caused by plaintiff's various impairments during the relevant time period. It therefore constitutes relevant and material evidence that could reasonably have influenced the ALJ's determination.

Therefore, this matter will be remanded so the Commissioner can consider this new evidence in conjunction with the existing administrative record. *See Wilson v. Colvin,* No. 7:13–CV–295, 2014 WL 4826787, at *3 (N.D.N.Y. Sept. 29, 2014) (Sharpe; C.J.) (remanding for consideration of treating physician's notes and opinion which were supplied to the Appeals Council after the ALJ rendered a decision). Further, at the end of her report, Ms. Enos indicated that "[a] more detailed narrative report is available upon request." R. at 497. Upon remand, the Commissioner may find such additional written information helpful to an updated RFC determination.

## IV. *CONCLUSION*

The ALJ properly developed the record at the time she rendered her written decision. However, there is no discussion of the detailed functional assessment that was completed thereafter. Plaintiff's treating physician specifically endorsed that assessment, which conflicts with the ALJ's determination that plaintiff retains the ability to perform sedentary work. As this matter will be remanded for further administrative proceedings, it is unnecessary to address Stratton's additional arguments.

Therefore, it is

ORDERED that

1. The Commissioner's decision denying plaintiff Disability Insurance Benefits and Supplemental Security Income is REVERSED; and

2. The case is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration and proceedings consistent with this Memorandum—Decision and Order.

IT IS SO ORDERED.